**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TERRY BROWN,                                            Case No. 1:19-cv-969
     Plaintiff,                                       Barrett, J.
                                            Litkovitz, M.J.

     vs.


HAMILTON COUNTY, OHIO/                          **REPORT AND**
HAMILTON COUNTY PROSECUTOR'S              **RECOMMENDATION**
OFFICE,
     Defendants.

## I.  Introduction

Plaintiff Terry Brown brings this pro se civil rights action against numerous defendants under 42 U.S.C. § 1983 alleging claims for violations of his First, Fourth, Fifth and Fourteenth Amendment Rights.   He also brings claims for violations of state law under the Court's supplemental jurisdiction.   The claims stem from an investigation into alleged terroristic threats made by plaintiff which led to his felony indictment on charges of making threats of terrorism and terrorism, his criminal prosecution in the Hamilton County, Ohio Court of Common Pleas in the case of *State of Ohio v. Terry Brown*, Case No. B1602390, and his acquittal on the charges at the conclusion of the trial.   Plaintiff claims that defendants conducted an illegal search and seizure of his personal property; he was subjected to a false, warrantless arrest and was falsely detained and imprisoned; and defendants pursued a malicious prosecution and violated his Fifth Amendment right against self-incrimination.   Plaintiff claims that defendants violated his rights to freedom of speech and due process based on his request to the Hamilton County Prosecutor's Officer (HCPO) that it criminally investigate Hamilton County Common Pleas Judge Leslie

Ghiz, the Cincinnati Police Department, and the Hamilton County Sheriff's Office. (Doc. 1 at 5). Plaintiff, an African American man, claims that defendants' conduct was apparently motivated in substantial part by his race. (Doc. 1 at 5). He claims that defendants Joseph Deters, the Hamilton County Prosecutor, and Hamilton County Common Pleas Judge Patrick Dinkelacker knew that former Judge Tracie Hunter, who was the defendant in a case Judge Dinkelacker presided over (*State of Ohio v. Tracie Hunter*, Case No. B1400110), "is black" and "was criminally investigated, charged, convicted and recently sent to jail." (Doc. 1 at 5). Plaintiff claims that defendants violated his constitutional rights because he asked that "a white Judge/law enforcement officers" be investigated regarding a matter that was of "interest to the public in general and to the African-American community in particular." (*Id*.).

## II.  Allegations of the complaint

Plaintiff makes the following allegations in the complaint. (Doc. 1). The Court accepts plaintiff's factual allegations as true for purpose of defendants' motions to dismiss and motions for judgment on the pleadings, which are discussed *infra*.

Plaintiff is a resident of the State of Ohio. (¶ 2). Defendant Deters is the Hamilton County, Ohio Prosecutor, and he exercises final policymaking authority for all assistant prosecutors, investigators, and other staff. (¶ 4). Defendant McKinley Brown is the HCPO's Chief Investigator. (¶ 5). Defendants Katherine Pridemore and Seth Teiger are HCPO Assistant Prosecutors. (¶¶ 6, 7). All employees of the HCPO were acting under color of law during the times in question and all are sued in their individual and official capacities. (¶¶ 4, 5, 6, 7).

Like Judge Dinkelacker, Judge Robert Winkler is a Hamilton County Common Pleas

2

Court judge. (¶¶ 8, 9). They were both acting under the color of state law and outside the scope of their duties as judge during the period in question, and they are sued in their individual and official capacities. (*Id.*)

Defendants Matthew Martin, Mike Drexelius, and Michael Fern are City of Cincinnati Police Officers. (¶¶ 11, 12, 13). Defendant Jerome Stineman and James Bogan are self-employed attorneys. (¶¶ 14, 15). These defendants were acting under color of law at all times in question and all are sued in their individual and official capacities. (¶¶ 11, 12, 13, 14, 15).

Defendant Court Clinic/Central Clinic (Court Clinic) is a private contractor to the courts that exercises final policymaking authority for all doctors, other employees, and staff. (¶ 16). Defendant Carla Dreyer was employed by the Court Clinic as a psychologist. (¶ 17). Defendant Summit Behavioral Healthcare (Summit) is a government agency that employed Elizabeth Banks as Director and Dr. Adelaida Fernandez as a psychiatrist. (¶ 18). These defendants were acting under color of law at all relevant times and are sued in their individual and official capacities. (¶¶ 17, 18, 19).

Defendant Sheriff Neil is the Hamilton County Sheriff, and he exercises final policymaking authority for the Hamilton County Sheriff's Office and Hamilton County. (¶ 20). Defendant Greater Cincinnati Fusion Center/Homeland Security (Fusion Center) is a governmental agency/contractor. At all times these defendants were acting under color of law, and defendant Neil was acting in his individual and official capacities. (¶¶ 20, 21).

On March 17, 2014, plaintiff filed a document captioned "Terry Brown's Notice To The Court" in former Hamilton County Juvenile Court Judge Tracie Hunter's criminal case (*State of Ohio v. Tracie Hunter*, Case No. B1400110). At Deters' direction, HCPO Chief Investigator

3

McKinley called plaintiff, asked him personal questions, and ultimately "wanted Plaintiff to be an informant" against Hunter.    (¶ 25).    When plaintiff refused and "exposed" Deters and McKinley's conduct to the "Court/Hunter's lawyer, Special Prosecutor[] and news media," the HCPO, unnamed Cincinnati police personnel, and the "Hamilton County Sheriff's Office" harassed plaintiff by "*[d]irectly sitting outside [his] home/job/stores/blowing horns/blinking hazard lights/U-Turns/sirens/car crashes/mobbed by red cars/street theater fake police stop/street informants staking inside stores/home/every location with picture of plaintiff wearing red[.]*"    (*Id.*)    In addition, defendant Fern "continued to allow an illegal debt collection company called GWC Construction to break/enter Plaintiff's home for continued harassment," and defendants did not answer plaintiff's "911 calls."    (*Id.*)    Plaintiff repeatedly sent written complaints via certified mail, email, and fax between March 17, 2014 and April 15, 2016 to the HCPO, Cincinnati police, and the Sheriff's Office, and he filed a writ of mandamus in the common pleas court to stop the alleged harassment by "law enforcement mentioned within."    (¶ 26); *see Terry Brown v. Cincinnati Police Dept.*, Case No. A1505170.    Judge Ghiz filed an entry on November 10, 2015, finding that the Cincinnati Police, the Hamilton County Sheriff's Office, and "911" were not required to take calls for services related to "Car Crashes, Illegal GPS Tracking and Menacing By Stalking."[1]    (¶ 26).

On March 3, 2016, plaintiff submitted another complaint to defendants Deters and McKinley Brown asking that they investigate the November 10, 2015 court entry, alleging "it promotes violence/and 18 U.S.C. 241, 242."    (¶ 27).    On April 15, 2016, plaintiff telephoned McKinley Brown regarding the same issues.    (¶ 28).    McKinley Brown asserted his office does

---

[1] Judge Ghiz granted defendants' motions to dismiss in Case No. A1505170 on that date.   She found that plaintiff was not entitled to a writ of mandamus or a writ of prohibition.

not investigate judges or police officers, and the discussion became heated because plaintiff knew that the Prosecutor's Office "helped criminally investigate Judge Tracie Hunter." (*Id.*) Plaintiff followed up with McKinley Brown and Deters via email that same day, but neither one responded. (*Id.*)

On May 1, 2016, the Cincinnati Police Department continued their harassment of plaintiff by coming to his home again, parking, and threatening "YOU'RE A DEAD MOTHERFUCKER." (¶ 29). Plaintiff sent an email to the City, the Cincinnati Police, and the HCPO to which he attached a video clip that allegedly showed "the Police Officer's criminal conduct against Plaintiff." (*Id.*) Plaintiff "clearly said if law enforcement continues to act criminally against him, he had no other choice but to protect himself." (*Id.*)

On May 3, 2016, after returning home from court in a hearing held in the case of *Terry Brown v. Eric Pennekamp, Cincinnati Police Officer*, Case No. A1503598, before Judge Patrick Foley, "Cincinnati Police, Swat (15) Team" called plaintiff out of his home with a bullhorn, put guns to his head, and handcuffed him without cause to arrest him.[2] (¶ 30). Office Drexelius told the Swat Team to place plaintiff in the police car, and when plaintiff asked why he was arrested and to see the search warrant, Drexelius told plaintiff that he would show it to him another day. (¶ 31). However, Drexelius never gave plaintiff the search warrant. *Id.* After the Swat team left the scene, Drexelius conducted a search of plaintiff's home without plaintiff's consent or a court-ordered search warrant and placed property on the front porch and in boxes. (¶ 32). Officer Martin came out of plaintiff's house an hour later, reported there were no illegal drugs in the house, and told a female officer to take plaintiff to the Hamilton County Justice

---

[2] It is not clear from the complaint who the members of the "Swat (15) Team" are.

Center for booking.   (¶ 33).   When the female officer asked what they would charge plaintiff with, Martin responded they would think of something when they met back at the Justice Center. (*Id.*)   Plaintiff and the female officer sat in the intake parking lot of the Justice Center for 25 minutes until Martin arrived.   (¶ 34).   Martin then called the HCPO, which 20 minutes later returned Martin's call and advised him to charge plaintiff with terrorism.   (*Id.*)

Plaintiff was taken inside the Justice Center for booking and was not permitted to call anyone.   (¶ 35).   The next day, he met Attorney Stineman for his arraignment and a $1 million bond was set.   (¶ 36).   On May 5, 2016, plaintiff was indicted on two charges: Count 1, Threats of Terrorism, for threatening Judge Ghiz on March 3, 2016; and Count 2, Terrorism, for making complaints against the Cincinnati Police Department/Hamilton County Sheriff's Office on May 2, 2016.   *See State of Ohio v. Terry Brown*, Case No. B1602390.   (¶ 37).

On or around May 20, 2016, defendant Carla Dreyer visited plaintiff to perform a court-ordered mental evaluation.   (¶ 38).   After plaintiff informed her that he could not hear her, she told plaintiff she would return another day to perform the evaluation.   (*Id.*)   However, on June 1, 2016, plaintiff attended a preliminary hearing before Judge Winkler where he was represented by Stineman.   (¶ 39).   Stineman told plaintiff the hearing was set because plaintiff had someone forward a video recording to Stineman via email that proved the Cincinnati Police had stalked and menaced plaintiff.   (*Id.*)   But Stineman did not mention the video evidence at the hearing, and Judge Winkler ordered that plaintiff be admitted to Summit Behavioral Healthcare (Summit) based on a report Dr. Dreyer had filed that morning, which plaintiff had not seen and was not given an opportunity to rebut.   (*Id.*)   Plaintiff later learned when he attempted to file an appeal that Stineman "had Judge Winkler not make his order an appealable order."   (¶ 41;

*see* Case No. C-160550).    Stineman withdrew as plaintiff's counsel on June 17, 2016, after

plaintiff was admitted to Summit, allegedly on the ground he could not represent plaintiff

because the facts proved plaintiff committed terrorism; however, the HCPO did not file

discovery until August 12, 2016, which plaintiff alleges shows Stineman did not have the true

facts and was acting in concert with defendants HCPO, Dr. Dreyer/Court Clinic, and Judge

Winkler.    (¶ 40).

        Plaintiff arrived at Summit on June 7, 2016.    (¶ 41).    Dr. Fernandez immediately began

to perform a mental evaluation, but plaintiff informed her his detention in the facility was illegal.

(*Id.*)    Plaintiff was illegally confined at Summit for one year because Judge Winkler's order was

not appealable.    (*Id.*)    While at Summit, Dr. Fernandez told plaintiff based on discovery she

had received from the HCPO that plaintiff had "committed the crime of Terrorism by threatening

AAA Road Service and Ohio Department of Public Safety"; plaintiff was being declared

mentally ill based on that evidence; and he needed medication.    (¶ 43).    Dr. Fernandez

subsequently refused to give plaintiff discovery from the State/HCPO and told him she would

file a case against him in court if he did not confess to terrorism.    (¶ 44).    Plaintiff filed formal

grievances against Dr. Fernandez, and she admitted in her report to the State that "she made a

mistake."    (*Id.*)    Plaintiff then asked Banks, the Director of Summit, to release him based on

fraudulent documents the HCPO had sent or move him to another unit within Summit.    (*Id.*)

She refused, which enabled Dr. Fernandez to continue harassing plaintiff.    (*Id.*)    Plaintiff

alleges these facts show that "Dr. Fernandez/Summit purposely acted maliciously, recklessly and

[with] wanton conduct" and are liable for "false/illegal imprisonment."    (*Id.*)

        On or around July 15, 2016, defendant Court Clinic and Dr. Hillman came to Summit to

perform a mental evaluation of plaintiff in what he alleges was an obvious effort to "cover-up" Dr. Dreyer's fraudulent report filed on June 1, 2016 in *State of Ohio v. Terry Brown*, B1602390, (¶ 45). Dr. Hillman refused plaintiff's request to have the mental evaluation be audio- and video-recorded, and she took from plaintiff the Court Clinic documents with his handwritten notes on them which he wanted to have copied and placed in his file. (¶ 46). Plaintiff claims that these facts show the Court Clinic is liable for "false/illegal imprisonment" because it failed to perform a mental evaluation, and a demand for plaintiff's release from Summit was to be made to the Court based on Dr. Dreyer's allegedly fraudulent June 1, 2016 report. (*Id.*)

On August 5, 2016, Dr. Robert Newman came to Unit A where plaintiff was housed and demanded to talk to plaintiff after first speaking with Dr. Fernandez. (¶ 47). Plaintiff demanded that their discussions be recorded, which Dr. Newman did not agree to. (*Id.*) Plaintiff informed Dr. Newman that plaintiff would file a criminal/civil action against him if Dr. Newman filed a report with the Court that mentioned mental illness. Plaintiff's discussion with Dr. Newman lasted less than 10 minutes, and Dr. Newman left without signing out of the unit. (*Id.*) On August 10, 2016, a hearing was held in Case No. B1602390. (¶ 48). Plaintiff was present at the hearing with his attorney, Perry Ancona. (*Id.*). Plaintiff alleges that Dr. Robert Newman was present at the hearing and Dr. Fernandez gave perjured testimony at the hearing by "denying she never received discovery from [the HCPO] to determine/list Plaintiff mentally ill/force medication." (*Id.*). Judge Winkler "granted Fernandez/Summit's action, but plaintiff won his appeal." (¶ 49). Plaintiff alleges that "Dr. Fernandez's own electronically filed notes within the State of Ohio system contradicted herself" because Dr. Fernandez "clearly admitted she received discovery from the Prosecutor's Office Joe Deters/making Plaintiff mentally

ill/force medication." (*Id.*)

Plaintiff alleges that Judge Winkler disqualified himself from *State v. Terry Brown* based on plaintiff's showing that Judge Winkler's orders were biased and retaliatory. (¶ 50). Plaintiff alleges that Judge Winkler knowingly had lawyers file fraudulent pleadings before him to illegally foreclose on plaintiff's property. (*Id.*). Plaintiff alleges that these facts show that he was "illegally classified" and falsely imprisoned in a mental hospital "for retaliatory reasons" and that all defendants "knew of this before, further charging Plaintiff with Terrorism/mental evaluations reports filed to the Court." (*Id.*)

Plaintiff alleges that Dr. Fernandez and Summit retaliated against him for exposing Dr. Fernandez's perjury to the court on appeal by arranging to have another doctor from Summit find that plaintiff was incompetent to stand trial and inform plaintiff that he was going to remain at Summit for two more years. (¶ 51). Another doctor found plaintiff was competent and he was released from Summit on May 30, 2017. (¶ 52).

Judge Dinkelacker then became the presiding judge over the state case, and on June 15, 2017, he ordered that plaintiff be detained without bond because there was evidence plaintiff had faxed a threat to Judge Ghiz. (¶ 53). Plaintiff unsuccessfully sought to have Judge Dinkelacker disqualify himself on the ground he was the presiding judge in former Judge Hunter's criminal case and it was discriminatory to bring an action against plaintiff for asking that Judge Ghiz, a "white" judge, be criminally investigated, charged, or convicted. (¶ 54). Judge Dinkelacker appointed James Bogan, the same attorney who represented former Judge Hunter, to represent plaintiff. (*Id.*). Bogan was appointed and gave plaintiff poor representation in retaliation for a filing plaintiff made on March 17, 2014 in former Judge

9

Hunter's criminal case, Case No. B1400110, which allegedly exposed illegal conduct by defendants Deters and McKinley Brown against Hunter. (*Id*.) Plaintiff alleges that on July 26, 2017, Judge Dinkelacker had plaintiff brought to court and told plaintiff he was sending him back to a mental hospital because plaintiff had filed two motions: a motion to appoint new counsel and a motion to disqualify Judge Dinkelacker. (¶ 55). Plaintiff alleges there was no legal basis for Judge Dinkelacker's action, and it "proves Dinkelacker/Bogan was totally acting out of the scope of their duties as Judge/lawyer and motivated by race discrimination," and plaintiff claims that defendants do not have absolute immunity from liability for such conduct. (*Id*.) Plaintiff claims that Judge Dinkelacker and Bogan harassed him for filing motions against them by having plaintiff sent to Twin Valley Behavioral Healthcare (Twin Valley) and asking that he be evaluated and committed for one to two years for "mental retardation." (¶ 57). The HCPO allegedly sent fraudulent discovery to Twin Valley and on September 21, 2017, Twin Valley sent plaintiff back to jail in the general population. (*Id*.)

Plaintiff alleges that Judge Dinkelacker harassed him by having a hearing without plaintiff present and having the Court Clinic "give mental evaluations weekly." (¶ 59). This led plaintiff to file a Notice with the court related to excessive mental evaluations and harassment. (*Id*.) Judge Dinkelacker also allegedly denied without a legal foundation a motion plaintiff had filed with the court on February 26, 2018, alleging that the Court Clinic failed to comply with its own policies and protect patients' rights by refusing to record mental evaluations. (¶ 60).

The criminal case against plaintiff, Case No. B1602390, went to trial on March 5, 2018. (¶ 61). A mistrial was declared that same date after defendants McKinley Brown, HCPO, and

police officer Martin testified and presented exhibits.    (*Id.*)    The testimony showed that defendants McKinley Brown and the HCPO asked defendants Cincinnati Police Department and the Fusion Center to issue an Alert (Bulletin) on plaintiff prior to his arrest based on threats plaintiff made against Judge Ghiz and police officers, and Martin made the decision to investigate and bring criminal charges against plaintiff.    (¶ 62).    Plaintiff alleges that McKinley Brown also confirmed that the Cincinnati Police Department "crashed Plaintiff's truck" and was willing to settle a case to repair plaintiff's truck, but the Cincinnati Police Department has refused to do so to date.    (¶ 63).

Judge Dinkelacker allowed plaintiff's private attorney to withdraw as counsel on June 11, 2018.    (¶ 66; *see* Case No. B1602390).    Plaintiff claims that Judge Dinkelacker attempted to secure a conviction by allowing counsel to withdraw due to a conflict of interest.    (¶ 68). Plaintiff also alleges that Judge Dinkelacker allowed the HCPO to relitigate a six-year old case in which plaintiff was the alleged victim so that defendant Fern could testify that plaintiff "was mentally ill/committed terrorism for filing criminal charges against" the named criminal defendant in the case of *State of Ohio v. George Batsakes*, Case No. 12/CRB/25919.    (¶ 66). Plaintiff alleges that Judge Dinkelacker allowed the HCPO to relitigate plaintiff's civil cases and he was aware of the March 3, 2016 complaint plaintiff had made, which were grounds for Judge Dinkelacker to disqualify himself.    (¶ 68).

Plaintiff's new court-appointed attorney filed motions in limine in plaintiff's criminal case to prevent the State from introducing evidence of prior cases, but plaintiff claims that Judge Dinkelacker denied the motions in violation of plaintiff's due process rights.    (¶ 70).    On the morning of his retrial on October 29, 2018, plaintiff found his business suits that were stored

from the first trial were gone and Justice Center staff gave him ill-fitting and dirty dress clothes to wear to trial. (¶ 71). Plaintiff refused a plea deal, which he alleges made Judge Dinkelacker angry and led to additional charges against plaintiff. (¶¶ 72, 73). Plaintiff alleges that this violated his constitutional rights and shows that the HCPO and Judge Dinkelacker wanted an all-white jury to convict plaintiff of terrorism based on his race for complaining about additional charges related to white judges. (¶ 73). Plaintiff alleges that he was charged with terrorism because he made complaints against "White" judges, but "White" judges in Cincinnati and Hamilton County are exempt from being criminally charged and convicted or investigated. (*Id*.). Plaintiff alleges that defendants' actions were "malicious, wanton, reckless, with no regards to [his] safety," as shown by defendants' reliance on testimony about the six-year old case to attempt to prove plaintiff was guilty in the terrorism case. (¶ 74).

One charge against plaintiff was dismissed on November 16, 2018.[3] *State of Ohio v. Terry Brown*, Case No. B16002390; *see* Doc. 59-1. Plaintiff was acquitted of the second charge on November 7, 2018. *Id*. Plaintiff appears to allege that since 2016, he has sent several emails and faxes to Sheriff Jim Neil which have been marked "Refused/returned." (Doc. 1, ¶ 78). Plaintiff alleges that this shows he was falsely imprisoned in the jail/mental hospital on November 15, 2018. (*Id*.) Plaintiff alleges that defendants Deters and McKinley Brown have continued to harass him by refusing to terminate the "Alert/Bulletin" they issued on April 15, 2015, to "law enforcement/fusion centers/homeland security." (*Id*.) Plaintiff sent an

---

[3] Plaintiff alleges that on November 15, 2018, a judgment of "Not Guilty/Dismissal" was issued on all criminal charges of terrorism after plaintiff had been detained for 2 1/2 years, but plaintiff was not released. (¶¶ 75-76). Instead, jail personnel told plaintiff that he was to be transported to the University of Cincinnati (UC) Mental Hospital, and a Hamilton County Deputy Sheriff transported him there. (¶¶ 77, 78). He was released from UC Hospital 45 minutes after he arrived. *Id*. Plaintiff eventually received a bill for $2,200 from the UC Hospital "from the fraudulent/harassment Defendant Sheriff Jim Neil/Hamilton County Justice Center caused." (*Id*.)

email and certified mail to them on July 30, 2019, reminding them "what they testified under oath" at his criminal trial and retrial. (*Id*.) In response they sent an email threatening to arrest plaintiff and "letting Plaintiff know they are continuing the illegal profiling/harassment against" him. (*Id*.)

Based on these allegations, plaintiff brings the following claims for relief: (1) violation of his free speech rights under the First and Fourteenth Amendments by creating and imposing an unlawful restraint - the Alert/Bulletin - which was issued to law enforcement and the Fusion Center/Homeland Security; arresting/detaining plaintiff at gunpoint; and searching and seizing his property without a warrant or probable cause (Count I); (2) violation of plaintiff's rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures by seizing plaintiff's property without a warrant, probable cause, or legal justification (Count II); (3) violation of plaintiff's rights under the Fourth Amendment to be free from false arrest, unlawful detention, and false imprisonment by unlawfully detaining and imprisoning plaintiff without a warrant, probable cause, or an exception to the warrant requirement (Count III); (4) violation of plaintiff's rights under the Fourth Amendment by using excessive force to restrain him ("guns to head/forced medication") (Count IV); (5) malicious prosecution in violation of plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights by charging plaintiff with criminal offenses and pursuing criminal prosecutions knowing there was no factual or legal basis for the charges, which were ultimately dismissed (Count V); (6) ratification in violation of plaintiff's rights under the Fourth and Fourteenth Amendments by charging plaintiff with terrorism and detaining him for 2 1/2 years on the part of defendants Cincinnati Police Department, Cincinnati Police Officers Martin and Drexelius, and Sheriff Neil

13

who "failed to investigate the unconstitutional acts and conduct of Defendants. [HCPO] -

[Deters, Brown, Pridemore, Tieger, and Fusion] knowing they were/is retaliating against Plaintiff

for exposing them on March 17, 2014 in former Judge Tracie Hunter's case/factual allegations

described above, regarding the arrest, imprisonment (jail/mental institution) and malicious

prosecution of Plaintiff"; and ratification on the part of Judges Winkler and Dinkelacker by

endorsing or ratifying the alleged unconstitutional deprivations plaintiff has described (Count

VI); (7) malicious prosecution in violation of plaintiff's state law rights by charging plaintiff

with criminal offenses and pursuing criminal prosecutions knowing there was no legal basis for

the charges (Count VII); (8) negligent and intentional infliction of emotional distress in violation

of state law based on conduct by defendants that lacked probable cause, was under color of law,

and was within the scope of their employment such that the individual employers are liable as are

attorneys Stineman and Bogan (Count VIII); (9) false imprisonment/false arrest in violation of

state law based on these same allegations (Count IX); (10) invasion of privacy by defendants

Cincinnati Police Department and Cincinnati Police officers Martin and Drexelius, in violation

of state law, by violating plaintiff's expectation of privacy in the contents of his home and by

stalking him, all with the intent to injure him and with ill will or spite, evil or fraudulent motives,

and with knowledge that they were violating his rights, and while acting within the scope of their

employment such that their employers are liable for their actions (Count X); and (11) assault and

battery in violation of state law by the Cincinnati Police Swat Team/Patrol Officers who put guns

to his head, arrested him, frisked and handcuffed him, left him in the police car for hours,

touched him without his consent and without privilege, and for which the Cincinnati Police

Department is vicariously liable (Count XI).    As relief, plaintiff seeks punitive damages against

defendants for actions taken in their individual capacity in a willful, wanton, and reckless manner (Count XII); a declaratory judgment that the customs, policies, and practices of defendants violate plaintiff's rights under the First, Fourth, Fifth and Fourteenth Amendments and should be permanently enjoined; compensatory damages; and costs and attorney fees.

### III. Pending motions

This matter is before the Court on the following motions:

(1) motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by defendant Patrick Dinkelacker (Doc. 21), plaintiff's response in opposition (Doc. 33), and defendant's reply (Doc. 40);

(2) motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by defendant Judge Robert Winkler (Doc. 24), plaintiff's response in opposition (Doc. 30), and defendant's reply (Doc. 39);

(3) motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by defendants City of Cincinnati and Cincinnati police officers Matthew Martin, Mike Drexelius, and Lieutenant Michael Fern (the City defendants) (Doc. 34), plaintiff's response in opposition (Doc. 41) and supporting exhibits (Docs. 41-46, Exhs. C1-C4, D-F2), and the City defendants' reply (Doc. 55);

(4) motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by defendants James Bogan, McKinley Brown, Joseph Deters, Greater Cincinnati Fusion Center/Homeland Security (Fusion Center), Hamilton County, Ohio/Hamilton County Prosecutor's Office (HCPO), Katherine Pridemore, and Seth Tieger (Doc. 47), plaintiff's response in opposition (Doc. 66), and defendants' reply (Doc. 74);

(5) motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by defendant Court Clinic/Central Clinic and Carla Dreyer (Doc. 57), plaintiff's response in opposition (Doc. 59), defendants' reply (Doc. 63), and plaintiff's surreply (Doc. 69);

(6) motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by defendants Adelaida Fernandez and Summit Behavioral Healthcare/Elizabeth Banks (Doc. 68), plaintiff's response in opposition (Doc. 78), and defendants' reply (Doc. 84);

(7) motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by defendant Jerome Stineman (Doc. 72), plaintiff's response in opposition (Doc.

77), and defendant's reply (Doc. 80);

(8) defendant Stineman's motion to strike plaintiff's response to his motion for judgment on the pleadings (Doc. 81) and plaintiff's response in opposition to the motion to strike (Doc. 83);

(9) plaintiff's motion to strike defendant Stineman's motion to strike (Doc. 82);

(10) plaintiff's motion for preliminary injunction against defendants the City, (Cincinnati Police Department-Matthew Martin/All Officers within (Intel Unit) County, Hamilton County Prosecutor's Office-McKinley Brown, Chief Investigator/Joseph Deters-Chief Prosecutor and Greater Cincinnati Fusion Center/Homeland Security (Doc. 75), plaintiff's supplemental supporting memorandum (Doc. 76), defendants' response in opposition (Doc. 79), and plaintiff's reply in support of the motion (Doc. 85);

(11) plaintiff's motion for sanctions against the County defendants (Doc. 49), defendants' response (Doc. 64), and plaintiff's reply (Doc. 67);

(12) plaintiff's motion for sanctions against the City defendants (Doc. 51), defendants' response (Doc. 56), and plaintiff's reply (Doc. 60); and

(13) plaintiff's motion for default judgment against defendants Hamilton County Sheriff's Office and Hamilton County Sheriff Jim Neil (Doc. 54), defendants' response in opposition (Doc. 65), and plaintiff's reply in support of his motion (Doc. 71).

## A. Rule 12(b)(6)/Rule 12(c) standard of review

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although the plaintiff need not

plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly,* 550 U.S. at 555, 570). A plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Although the court must accept well-pleaded factual allegations as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 544, 555 (citing *Papasan v. Attain,* 478 U.S. 265, 286 (1986)).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 89, 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized that the Supreme Court's liberal construction case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

The Court may consider exhibits attached to a defendant's motion to dismiss "so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *accord Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Where the plaintiff "fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." *Thomas v. Publishers Clearing H., Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (citations omitted).

The standard of review for a motion for judgment on the pleadings under Fed. R. Civ. P.

12(c) is the same standard that applies to a motion to dismiss pursuant to Rule 12(b)(6): the allegations must state a plausible claim for relief. *Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 314 (6th Cir. 2018).

### B. Rule 12(b)(6)/Rule 12(c) motions

#### 1. Judge Dinkelacker's motion to dismiss (Doc. 21)

Judge Dinkelacker moves to dismiss the complaint for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).[4] (Doc. 21). Judge Dinkelacker contends that plaintiff's claims against him in both his individual and official capacities must be dismissed because he has absolute immunity from suit, and plaintiff fails to state a claim for which relief can be granted. (*Id*. at 2). Judge Dinkelacker argues that he was acting within his jurisdiction, and each of the acts that plaintiff complains about are acts that he took in his judicial capacity.

A government official can be held individually liable in a federal civil rights action under 42 U.S.C. § 1983 if the official, acting under color of state law, caused a deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159 (1985). Judges, though, are generally immune from suit for money damages. *Mireles v. Waco*, 502 U.S. 9 (1991). *See also Bright v. Gallia County*, 753 F.3d 639, 648-49 (6th Cir. 2014); *Cooper v. Rapp*, 702 F. App'x 328, 332 (6th Cir. 2017). The far-reaching immunity afforded judges benefits the public interest by ensuring "that . . . judges should be at liberty to exercise their functions with independence and without fear of consequences," and it applies "even when the judge is accused of acting maliciously and corruptly." *Cooper*, 702 F. App'x at 332 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (internal quotation marks omitted)).

---

[4] The motion is also brought under Rule 12(b)(1), but it is not necessary to review the motion under that provision of Rule 12.

18

The question of entitlement to absolute judicial immunity is a purely legal question at the pleading stage. *Bright*, 753 F.3d at 648. The "proponent of a claim to absolute immunity [] bears the burden of establishing the justification for such immunity." *Id*. (quoting *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432 (1993)). Judges are afforded absolute immunity from liability for damages for acts they commit while functioning within their judicial capacity except in two situations. *Mireles*, 502 U.S. at 11-12. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id*. (internal citations omitted). "Whether an act is judicial depends on the nature and function of the act, not the act itself." *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997) (quoting *Mireles*, 502 U.S. at 13) (internal quotation marks omitted). In determining whether an act is judicial, the Court looks to: (1) "the nature of the act itself, whether the act is a 'function normally performed by a judge'"; and (2) "whether the parties 'dealt with the judge in his judicial capacity.'" *Id*. (quoting *Mireles*, 502 U.S. at 12). In general, litigants can protect themselves from judicial errors through the appellate process or other judicial proceedings without resort to suits for personal liability. *Bright*, 753 F.3d at 649 (citing *Forrester v. White,* 484 U.S. 219, 226-27 (1988)). If the presiding judge and the court of common pleas in a state criminal case had subject matter jurisdiction over the underlying criminal proceedings, then it cannot be said that the judge acted "'clearly outside the subject matter of the court over which he presides.'" *Brookings v. Clunk,* 389 F.3d 614, 623 (6th Cir. 2004) (quoting *Johnson v. Turner,* 125 F.3d 324, 334 (6th Cir. 1997)).

Here, Judge Dinkelacker, a judge in the Hamilton County, Ohio Court of Common Pleas,

was the presiding judge over the criminal case prosecuted against plaintiff in the Hamilton County Court of Common Pleas, *State of Ohio v. Terry Brown*, B 1602390. (Doc. 1, ¶¶ 8, 53). Each of the actions that Judge Dinkelacker allegedly took occurred in the context of the criminal proceedings. Plaintiff alleges that after Judge Dinkelacker became the presiding judge over the criminal case, he ordered that plaintiff be detained without bond (Doc. 1, ¶ 53); denied plaintiff's request that he disqualify himself from the case (*Id.*, ¶ 54); appointed the same counsel who had represented former Judge Tracie Hunter to represent plaintiff in his criminal trial (*Id.*); ordered that plaintiff be returned to a mental hospital to be evaluated and treated (*Id.*, ¶¶ 55, 57); had plaintiff evaluated by the Court Clinic on a weekly basis (*Id.*, ¶ 59); issued rulings on motions and evidentiary issues that were not in plaintiff's favor (*Id.*, ¶¶ 60, 68, 70); and conducted hearings without plaintiff present (*Id.*, ¶ 59). Each of these acts is a "'function normally performed by a judge'" and in each instance, plaintiff and the other parties to the proceedings "'dealt with [Judge Dinkelacker] in his judicial capacity.'" *Barnes,* 105 F.3d at 1116 (quoting *Mireles*, 502 U.S. at 12). *See Lundeen v. Ridge*, No. 2:11-cv-430, 2011 WL 5914238, at *2 (S.D. Ohio Oct. 18, 2011), *report and recommendation adopted,* 2011 WL 5920899 (S.D. Ohio Nov. 28, 2011) (citing *Brookings,* 389 F.3d at 618) (citing in turn *Barrett v. Harrington,* 130 F.3d 246, 255 (6th Cir. 1997)) ("decisions regarding the conduct of judicial proceedings and the actual resolution of motions presented by parties . . . are foundational judicial actions" as are "[a]ctions taken in resolving disputes between parties who have invoked the jurisdiction of a court"). *See also DePiero v. City of Macedonia,* 180 F.3d 770, 784 (6th Cir. 1999) (citing cases) (issuing a search warrant, issuing an arrest warrant, and trying a criminal defendant on charges against him are "function[s] normally performed by a judge"). Plaintiff has not

20

plausibly alleged that Judge Dinkelacker acted in the "complete absence of all jurisdiction," and neither could plaintiff make a plausible claim to that effect.   *See Cooper*, 702 F. App'x at 332 (citing *Mireles*, 502 U.S. at 11-12; *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)).

Further, plaintiff's allegations that Judge Dinkelacker's actions lacked a proper legal basis, were motived by race discrimination, or had the purpose of harassing plaintiff are insufficient to show that Judge Dinkelacker was acting outside of the scope of his duties as judge for the Hamilton County Court of Common Pleas.   *See Cooper,* 702 F. App'x at 332 (quoting *Stump*, 435 U.S. at 356-57) ("the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge," and "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority") (internal quotation marks omitted).   Judge Dinkelacker is therefore entitled to absolute immunity from suit on plaintiff's claims for damages against him under 42 U.S.C. § 1983.[5]

Plaintiff also seeks declaratory relief against Judge Dinkelacker.   (Doc. 1 at 39). Plaintiff has not stated a claim upon which relief may be granted to the extent he seeks to hold Judge Dinkelacker liable under § 1983 in his official capacity for any type of relief.   Plaintiff's suit against Judge Dinkelacker in his official capacity is essentially a suit against the Hamilton

---

[5]  Plaintiff cites the decision in *Goodwin v. Cir. Ct. of St. Louis County, Mo.*, 729 F.2d 541 (8th Cir. 1984) to support his claim that he can recover punitive damages for the alleged violation of his Fifth Amendment rights by Judge Dinkelacker.   (Doc. 33 at 5).   *Goodwin* is not applicable to this case.   *Goodwin* addressed whether the defendant judge, who presided over the court division that employed the plaintiff in that case, could assert defenses of "good faith" and qualified immunity to plaintiff's claims of employment discrimination under § 1983 and Title VII.   *Id*. at 548.   Plaintiff also cites the Supreme Court's decision in *Davis v. Passman*, 442 U.S. 228 (1979), to support the proposition that damages are available against Judge Dinkelacker for violating plaintiff's constitutional rights to be free from discrimination.   (Doc. 33 at 9).   *Passman* also did not address judicial immunity and has no bearing on plaintiff's claims against Judge Dinkelacker.

County Court of Common Pleas, the entity of which Judge Dinkelacker is an agent. *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690 (1978). The Hamilton County Court of Common Pleas is part of the Ohio state court system, created by the Ohio state legislature, and subject to the supervision of the Ohio Supreme Court. Ohio Rev. Code § 2301.01(A); Ohio Const., Art. IV § 4(A). Ohio courts of common pleas are therefore arms of the state for purposes of the Eleventh Amendment and are immune from suit in federal court. *See Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997). *See also Smith v. Grady*, 960 F. Supp. 2d 735, 751 (S.D. Ohio 2013) (acknowledging the continued viability of *Mumford*). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985). *See also Hoskins v. Hamilton County Juv. Ct.*, No. 1:18-CV-305, 2019 WL 3780438, at *6 (S.D. Ohio Aug. 12, 2019) (Litkovitz, M.J.), *report and recommendation adopted,* 2019 WL 4142716 (S.D. Ohio Aug. 30, 2019) (Barrett, J.). As such, plaintiff's claims against defendant Dinkelacker in his official capacity are barred by the Eleventh Amendment. Plaintiff's claims brought against defendant Dinkelacker under § 1983 should be dismissed.

Judge Dinkelacker also moves to dismiss any claims plaintiff brings against him under state law. Plaintiff has not alleged facts which support a claim for relief against Judge Dinkelacker under a state law theory of liability. These claims should also be dismissed. Judge Dinkelacker should be dismissed as a party to this lawsuit.

## 2.    Judge Robert Winkler's motion to dismiss (Doc. 24)

Judge Robert Winkler brings a motion to dismiss the complaint for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).[6]    (Doc. 24).    Plaintiff's claims against Judge Winkler are barred for the same reasons his claims against Judge Dinkelacker are barred.    Plaintiff sues Judge Winkler, a former judge in the Hamilton County Court of Common Pleas, for acts taken in his judicial capacity for which he has absolute immunity from liability.    Plaintiff alleges that Judge Winkler issued an order that he be admitted to Summit Behavioral Healthcare based on a report that was filed with the court; that Judge Winkler issued an order on August 10, 2016, in connection with a hearing in Case No. B1602390, which plaintiff attended with his attorney; and that Judge Winkler issued biased and retaliatory orders before granting plaintiff's motion to recuse in *State v. Terry Brown*, B 1602390, in the Hamilton County Court of Common Pleas. (Doc. 1, ¶¶ 39, 40, 49, 50).    Each of Judge Winkler's actions occurred in the context of judicial proceedings in the Hamilton County Court of Common Pleas.    Each act alleged by plaintiff is a "'function normally performed by a judge,'" and in each instance plaintiff and the other parties to the proceedings "'dealt with [Judge Winkler] in his judicial capacity.'"    *Mireles*, 502 U.S. at 12.    *See Lundeen,* 2011 WL 5914238, at *2 (making decisions regarding the conduct of judicial proceedings and resolving motions presented by the parties are fundamental judicial actions). Plaintiff's allegations do not plausibly suggest that Judge Winkler acted in the "complete absence of all jurisdiction," and neither could plaintiff make a plausible claim to that effect. *See Cooper*, 702 F. App'x at 332 (citing *Mireles*, 502 U.S. at 11-12; *Stump*, 435 U.S. at 356-57). Further, plaintiff's allegations that Judge Winkler lacked a proper legal basis for his actions,

---

[6] The motion is also brought under Rule 12(b)(1), but it is not necessary to review the motion under that provision of Rule 12.

which were motived by vengeance or bias or violated his due process rights, are insufficient to show that Judge Winkler was acting outside of the scope of his duties as judge for the Hamilton County Court of Common Pleas.   *See Cooper,* 702 F. App'x at 332 (quoting *Stump*, 435 U.S. at 356-57).   A judge will be deprived of immunity "only when he has acted in the 'clear absence of all jurisdiction.'"   *Stump*, 435 U.S. at 356-57.   Plaintiff's own allegations clearly show that Judge Winkler was acting within the scope of his jurisdiction at all relevant times.   Judge Winkler is therefore entitled to absolute immunity from suit on plaintiff's claims for damages under 42 U.S.C. § 1983.

Plaintiff also seeks declaratory relief against Judge Winkler.   (Doc. 1 at 39).   Plaintiff has not stated a claim upon which relief may be granted to the extent he seeks to hold Judge Winkler liable under § 1983 in his official capacity for any type of relief.   Plaintiff's suit against Judge Dinkelacker in his official capacity is essentially a suit against the Hamilton County Court of Common Pleas, the entity of which Judge Winkler is an agent.   *Monell*, 436 U.S. at 690.   Because the State of Ohio has not waived its Eleventh Amendment immunity to liability, plaintiff's claims against defendant Winkler in his official capacity are barred by the Eleventh Amendment.   Those claims should be dismissed.

Any state law claims plaintiff seeks to bring against Judge Winkler should also be dismissed.   Plaintiff has not alleged facts in the complaint that support a claim for relief against Judge Winkler under any state law theory of liability.   Judge Winkler should be dismissed as a party to this lawsuit.

3.  **Motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by defendants City of Cincinnati and Cincinnati police officers Matthew Martin, Mike Drexelius, and Lieutenant Michael Fern (Doc. 34)**

i.  *Plaintiff's claims against defendant Fern*

Cincinnati Police Officer Lieutenant Fern argues that plaintiff's claims against him must be dismissed because the only allegation in the complaint pertaining to him relates to an incident that occurred in 2014.   (Doc. 34 at 7, citing Doc. 1, ¶¶ 25, 74; Doc. 34, Exh. A).   Defendant argues that any claim arising from the incident is barred by the statute of limitations and the doctrine of res judicata.   In response, plaintiff contends that Fern testified at his criminal retrial that began on October 29, 2018, following an earlier mistrial, that "debt collectors have rights to commit criminal trespassing/entered Plaintiff's Tuxworth Ave[nue] home due his mortgage payments were in default."   (Doc. 41 at 3).

Plaintiff's claims against defendant Fern should be dismissed for failure to state a claim for relief.   Plaintiff does not allege that defendant Fern was involved in any of the conduct giving rise to plaintiff's claims under § 1983 or under state law.   Plaintiff does not allege that Fern was present or otherwise participated in the search and seizure of his property and his arrest on May 3, 2016, or that Fern was involved in his detention, his indictment, or his prosecution (other than as a witness at his retrial) following his May 2016 arrest.   The only allegations in the complaint related to defendant Fern are that sometime around March 17, 2014, Fern "continued to allow an illegal debt collection company called GWC Construction to break/enter Plaintiff's home for continued harassment," and defendants did not answer plaintiff's "911 calls."   (Doc. 1, ¶ 25).   Plaintiff also alleges that in June 2018, Judge Dinkelacker allowed the HCPO to relitigate a six-year old case in which plaintiff was the victim (*State of Ohio v. George*

25

*Batsakes*, Case No. 12/CRB/25919) so that defendant Fern could testify before a jury that plaintiff was "mentally ill/committed terrorism for filing criminal [trespassing] charges" against a mortgage company employee after plaintiff had defaulted on his mortgage.   (Doc. 1, ¶ 66). These allegations have no plausible connection to the claims asserted in the complaint and do not state a claim against Fern for violation of plaintiff's constitutional rights and his rights under state law.   In addition, as explained *infra*, any claim relating to defendant Fern's actions in 2014 is barred by the two-year statute of limitations governing such claim.   *See* pp. 26-27. Moreover, defendant Fern is absolutely immune from civil liability based on his trial testimony in 2018.   *Briscoe v. Lattue*, 460 U.S. 325 (1983).   Thus, defendant Fern's motion to dismiss should be granted and Fern should be dismissed as a party to the lawsuit.

### ii.   *Plaintiff's § 1983 claims against the remaining City defendants*

Defendants City of Cincinnati and Cincinnati police officers Martin and Drexelius argue that plaintiff's § 1983 claims must be dismissed on several grounds.   (Doc. 34).   First, defendants contend that plaintiff's claims for First Amendment retaliation and excessive force in violation of the Fourth Amendment are barred by the applicable statute of limitations.   (*Id*. at 4).   Limitations periods in § 1983 suits are determined by reference to the appropriate state statute of limitations and the coordinate tolling rules.   *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (citing *Board of Regents, University of New York v. Tomiano*, 446 U.S. 478, 484 (1980)). The appropriate statute of limitations for § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual.   *See Banks v. City of Whitehall*, 344 F.3d 550, 553-54 (6th Cir. 2003); *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc).

Although state law provides the statute of limitations in a § 1983 action, federal law governs the question of when the statute of limitations begins to run. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Sevier v. Turner*, 742 F.2d 262, 272-273 (6th Cir. 1984). The statute of limitations starts to run when the plaintiff knows or has reason to know of his injury, i.e., when he should have discovered it through the exercise of reasonable diligence. *Sevier,* 742 F.2d at 273; *see also Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). When a plaintiff asserts a claim under § 1983 for the use of excessive force, "the 'injury' occurs on the date of the constitutional injury, the date the allegedly excessive force is used." *Williams v. Schismenos*, 258 F. Supp. 3d 842, 853 (N.D. Ohio 2017), *aff'd,* 738 F. App'x 342 (6th Cir. 2018) (quoting *Hodge v. City of Elyria,* 126 F. App'x 222, 224 (6th Cir. 2005) (citing *Washington v. Summerville,* 127 F.3d 552, 556 (7th Cir. 1997)); *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) ("A § 1983 claim for excessive force in effectuating an arrest accrues at the time of arrest.") (citation omitted)). A First Amendment retaliation claim "does not accrue until the plaintiff knows or has reason to know of the injury that forms the basis of his claim." *Castelvetere v. Messer*, No. 1:12-cv-02453, 2014 WL 977709, n. 7 (N.D. Ohio Mar. 12, 2014), *aff'd,* 611 F. App'x 250 (6th Cir. 2015) (the injury underlying the plaintiff's First Amendment retaliation claim was his indictment, which occurred more than two years before he filed the complaint).

Liberally construing the complaint, plaintiff brings the following claims against the City defendants for violations of his constitutional rights under the Fourth Amendment: defendants violated his rights to be free from false arrest, unlawful detention, and false imprisonment by unlawfully detaining and imprisoning plaintiff at gunpoint (Count III); defendants violated

plaintiff's Fourth Amendment right to be free from excessive force ("guns to head/forced medication") (Count IV); and defendants violated plaintiff's right to be free from malicious prosecution by charging plaintiff with criminal offenses and pursuing criminal prosecutions of him knowing there was no factual or legal basis for the charges, which were ultimately dismissed (Count V).

Plaintiff's Fourth Amendment claims for use of excessive force against defendants Martin, Drexelius, and the City should be dismissed because they are time-barred. In support of these claims, plaintiff alleges that "Cincinnati Police, Swat (15) Team handcuffed plaintiff [and] put guns to his head" and searched his home without a search warrant after he returned from a court hearing in *Terry Brown v. Eric Pennekamp, Cincinnati Police Officer*, Case No. A1503598, on May 3, 2016. (Doc. 1, ¶¶ 30, 31). Plaintiff alleges that defendant Drexelius told the Swat team to place plaintiff in the police car, and he also told plaintiff when he demanded to see the search warrant that he would give it to plaintiff on another day, which Drexelius did not do. (*Id*., ¶ 31). Based on these allegations, any claims for excessive force plaintiff brings against the City defendants accrued on May 3, 2016. The statute of limitations expired two years later on May 3, 2018. Plaintiff did not file his complaint until November 14, 2019, more than 18 months after the statute of limitations expired. Therefore, plaintiff's Fourth Amendment claims for excessive force against defendants Martin, Drexelius, and the City (Counts II, IV) are barred by the statute of limitations and should be dismissed.

Plaintiff also brings Fourth Amendment claims under § 1983 for false arrest/unlawful detention/false imprisonment. (Doc. 1, Count III). Plaintiff's claim for false imprisonment/unlawful detention arises out of his claim for false arrest, both of which are

"constitutionally cognizable" and "arise under the Fourth Amendment." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (citing *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020)). When as here "a false-imprisonment claim arises out of an alleged false arrest," the two claims are identical. *Id*. (citing *See Corvin v. Bice*, No. 1:05-cv-219, 2007 WL 776501, at *4 (E.D. Tenn. Mar. 9, 2007) (citing *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988)).

Plaintiff's false arrest/false imprisonment claims are time-barred. Plaintiff was arraigned on May 4, 2016. (Doc. 1, ¶ 36). The limitations period for a false arrest or false imprisonment claim under § 1983 begins to run when legal process is initiated, which occurs when an individual is arraigned on charges or bound over for trial. *Wallace*, 549 U.S. at 389-90. Once the individual is held pursuant to legal process, the false arrest and false imprisonment end. *Id*. at 390. Plaintiff was held pursuant to legal process and his alleged false arrest and false imprisonment ended on May 4, 2016, when he was arraigned. Accordingly, plaintiff's false arrest/false imprisonment claims brought against the City defendants under § 1983 (Count III) should be dismissed as barred by the statute of limitations.

Plaintiff also brings a claim for malicious prosecution under the Fourth Amendment. (Count V). To establish a malicious prosecution claim in violation of the Fourth Amendment, the plaintiff must show that a criminal prosecution was initiated against him and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Fox,* 489 F.3d at 237). "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Id*. at 308 n. 5. The second element the plaintiff must show is "a lack of probable cause for the criminal prosecution." *Id*.

29

(citing *Fox,* 489 F.3d at 237; *Voyticky v. Village of Timberlake,* 412 F.3d 669, 675 (6th Cir. 2005)).    Third, the plaintiff must show continued detention beyond the initial seizure pursuant to a legal proceeding.    *Id.* (citing *Johnson v. Knorr,* 477 F.3d 75, 81 (3d Cir. 2007); *Gregory v. City of Louisville,* 444 F.3d 725, 748-50 (6th Cir. 2006)).    Finally, the criminal proceeding must have been resolved in the plaintiff's favor.    *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Plaintiff has not alleged facts to show that the City defendants participated in any way in the decision to prosecute him.    This Fourth Amendment malicious prosecution claim against the City defendants should be dismissed for failure to state a claim for relief.

Plaintiff also brings First Amendment retaliation claims against the City defendants based on his arrest and prosecution.    Plaintiff alleges the City defendants violated his free speech rights under the First Amendment when they arrested/detained plaintiff at gunpoint, searched/seized his property without a warrant or probable cause, and charged plaintiff with criminal offenses and pursued criminal prosecutions.    (Counts I, V).    The City defendants contend these claims are time-barred.    (Doc. 34 at 4, citing *Rapp v. Putman*, 644 F. App'x 621 (6th Cir. 2016)).    They argue that the two-year statute of limitations for a First Amendment retaliation claim accrues on the date the retaliation occurs.    (*Id.*)    They assert that plaintiff's claim accrued no later than May 3, 2016.    (*Id.*).

Typically, a First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct."    *Rapp*, 644 F. App'x at 624 (quoting *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).    A

30

First Amendment retaliatory-prosecution claim includes a fourth element, which is "the prosecution lacked probable cause." *Id*. (citing *Hartman v. Moore,* 547 U.S. 250, 265-66 (2006); *Barnes v. Wright,* 449 F.3d 709, 720 (6th Cir. 2006)). However, in contrast to a malicious prosecution claim, the plaintiff need not prove that the prosecution was terminated in his favor in order to establish the probable cause element of a *retaliatory* prosecution claim. *Id*. at 625 (citing *Mata v. Anderson,* 635 F.3d 1250, 1253 (10th Cir. 2011); *Williams v. Davis,* 609 F. App'x 865, 867 (7th Cir. 2015) ("Whether a person is convicted of a crime is irrelevant to [a retaliatory prosecution claim.]")).

Plaintiff has not stated a claim against the City defendants for retaliatory prosecution for the same reasons he has not stated a malicious prosecution claim under the Fourth Amendment. Plaintiff's remaining First Amendment claims against the City defendants should be dismissed as time-barred. Plaintiff knew or should have known of the injury caused by the City defendants' alleged retaliatory actions on the dates defendants arrested/detained plaintiff, searched and seized his property, and brought criminal charges against him, all of which occurred more than two years before the date he filed his complaint. *See Rapp*, 644 F. App'x at 625 ("once defendants initiated the prosecution against plaintiff, each element of the [retaliatory prosecution] cause of action was present and his claim became actionable"). Accepting the allegations of the complaint as true, as of the date of his indictment plaintiff had engaged in protected activity (first element); defendants took an adverse action against plaintiff by arresting and charging him, which led to his indictment (second element), defendants were purportedly motivated by plaintiff's protected conduct (third element), and probable cause for plaintiff's arrest and the criminal charges were allegedly lacking (fourth element). *Id.* at 624 (citing *Thaddeus-X,* 175

F.3d at 394; *Barnes,* 449 F.3d at 720).    Plaintiff filed his complaint more than two years after

these events.    Plaintiff's First Amendment retaliation claims against the City defendants should

be dismissed as time-barred.

Plaintiff also brings Fourth Amendment claims for unlawful search and seizure against

defendants Martin, Drexelius, and the City.    These claims are likewise barred by the applicable

statute of limitations.    The statute of limitations on a claim for unlawful search and seizure

under the Fourth Amendment accrues at the time of the search and seizure.    *Williams v. Monroe*

*Cty., Kentucky*, No. 110CV-P123-M, 2010 WL 4006370, at *1 (W.D. Ky. Oct. 13, 2010) (citing

*Harper v. Jackson*, 293 F. App'x 389, 392 n. 1 (6th Cir. 2008)).    (Doc. 34 at 8, Exh. C).

Plaintiff alleges that "Cincinnati Police, Swat (15) Team" handcuffed plaintiff, "put guns to his

head," and searched his home without a search warrant after he returned from a court hearing in

*Terry Brown v. Eric Pennekamp, Cincinnati Police Officer*, Case No. A1503598, on May 3,

2016.    (Doc. 1, ¶¶ 30, 31).    Plaintiff alleges that defendant Drexelius told the Swat Team to

place plaintiff in the police car and told plaintiff when he demanded to see the search warrant

that he would give it to plaintiff another day, which he did not do.    (*Id*., ¶ 31).    Plaintiff alleges

that Drexelius searched plaintiff's home and placed his property on the front porch and in boxes.

(*Id*., ¶ 32).    Plaintiff alleges that Martin searched plaintiff's home illegally and ordered that

plaintiff be taken to the Hamilton County Justice Center for booking after the search was

complete, even though he told another officer there were no illegal drugs found in plaintiff's

home.    (*Id*., ¶ 33).    All of these alleged actions occurred more than two years prior to the date

plaintiff filed his complaint.    Thus, plaintiff's claims against the City defendants for

unreasonable search and seizure in violation of his Fourth Amendment rights should be

dismissed as time-barred.

### iii. *Plaintiff's § 1983 claims against the City*

The City cannot be held liable in this matter under § 1983 for the acts of its employees. A plaintiff cannot sue a local government entity on the theory of *respondeat superior* under § 1983. *Gregory*, 444 F.3d at 752 (citing *Monell,* 436 U.S. at 692-94). For a municipality to be liable under § 1983, the city itself must be engaged in its "own wrongdoing." *Id.* (citing *Monell*, 436 U.S. at 692-94). A plaintiff may show that a municipality is liable by demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Where a plaintiff attempts to impose liability on a government agency based on a single act, he must demonstrate that an official responsible for establishing "final policy with respect to the subject matter in question" made a "deliberate choice to follow a course of action . . . from among various alternatives," and the course of action was the "moving force" behind the plaintiff's injury. *Id.* at 479 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 484-85 (1986)). The complaint does not include allegations that satisfy any of these criteria. Plaintiff's § 1983 claims against the City should be dismissed.

### 4. **Plaintiff's state law claims against the City defendants**

The City defendants argue that plaintiff's claim for assault and battery is barred by the applicable one-year limitations period. (Doc, 34 at 4, citing *Love v. City of Port Clinton*, 524

N.E.2d 166, 167 (Ohio 1988)).   Ohio Rev. Code § 2305.111 provides a one-year limitations

period for plaintiff's state law claim of assault and battery.   Plaintiff filed this action more than

three years after the alleged assault and battery by the City defendants.   This claim should be

dismissed as time-barred.

The City defendants contend that plaintiff has failed to state a claim for negligent or

intentional infliction of emotional distress.   (Doc. 34 at 13-14).   To establish a claim for

negligent infliction of emotional distress under Ohio law, plaintiff must plead the following

elements: "(1) the plaintiff witnessed and/or experienced a real or impending danger to another,

(2) the defendant's conduct negligently caused the dangerous incident, and (3) the defendant's

conduct was the proximate cause of plaintiff's serious and reasonably foreseeable emotional

distress."   *Stout v. U.S.*, 721 F. App'x 462, 473 (6th Cir. 2018) (citing *David v. Matter*, 96

N.E.3d 1012 (Ohio Ct. App. Aug. 25, 2017)).   Plaintiff's complaint does not include any

allegations concerning "danger to another," and his claim for negligent infliction of emotional

distress should therefore be dismissed.

In Ohio, a plaintiff claiming intentional infliction of emotional distress must show that:

(1) the defendant intended to cause plaintiff's emotional distress or should have known that such

serious emotional distress would result, (2) the defendant's conduct was outrageous, extreme,

beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) the

defendant's conduct proximately caused the plaintiff's psychic injury, and (4) the plaintiff's

emotional distress was so serious that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099, 1110 (6th Cir. 2008).   Plaintiff has

not sufficiently alleged these elements.   Plaintiff claims that the City defendants searched his

home, seized his property, and arrested him, after which he was detained in mental health facilities for extended periods of time and prosecuted without probable cause. But according to the allegations of the complaint, plaintiff was detained at mental health facilities pursuant to orders issued by the trial court after court-appointed mental health experts had evaluated plaintiff and issued reports to the court. The arresting and charging officers were not involved in decisions to detain plaintiff in a mental facility. At most, they were involved in the search of plaintiff's home and seizure of his property, his arrest and imprisonment on the charges brought against him, and his prosecution. Their involvement in these matters does not rise to the level of conduct that was outrageous, extreme, beyond all possible bounds of decency, and utterly intolerable in a civilized community. *See Voyticky,* 412 F.3d at 678 (routine conduct stemming from the plaintiff's arrest and detention did "not approach the high standard [for intentional infliction of emotional distress] adopted by the Ohio Supreme Court"). *See also Snyder v. U.S.*, 990 F. Supp. 2d 818, 835 (S.D. Ohio 2014), *aff'd,* 590 F. App'x 505 (6th Cir. 2014) (the improper identification of the plaintiff which led to her mistaken arrest was not the set of facts that "'to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'") (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (1983), *abrogated on other gds. by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007)). Further, because they were not involved in judicial decisions to detain plaintiff at mental health facilities, the City defendants' actions were not a proximate result of any psychic injury plaintiff allegedly suffered as a result of being detained at these facilities and they cannot be held liable for any such injury. Plaintiff's state law claims for intentional infliction of emotional distress should be dismissed.

35

The City defendants argue that the complaint fails to state a claim under Ohio law for false arrest, false imprisonment, malicious prosecution, and invasion of privacy because there was probable cause for plaintiff's arrest.   (Doc. 34 at 11-13; Doc. 55 at 8, citing *Evans v. Detlefsen*, 857 F.2d 330, 338 (6th Cir. 1988) ("If the arrest was lawful in the sense that it was supported by probable cause, there can have been no invasion of privacy in effecting it").   They argue that the indictment "is presumptively a finding of probable cause and there is no evidence to rebut that presumption."   (Doc. 34 at 12).   Defendants also contend that plaintiff cannot state a claim for invasion of privacy based on an allegedly unlawful search and seizure because defendants had a search warrant.   (Doc. 34 at 12, citing *Dye v. Columbus Retail Merchants Delivery, Inc*., No. 75AP-252, 1975 WL 181891 (Ohio App. 10th Dist. Nov. 4, 1975)) ("Any activity or inconvenience caused [an individual] by execution of the search warrant does not constitute an invasion of privacy," which "contemplates a wrongful intrusion into a person's private life.").

Under Ohio law, the "false arrest and false imprisonment" causes of action "are indistinguishable."   *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005) (quoting *Rogers v. Barbera,* 164 N.E.2d 162, 164 (Ohio 1960) (quoting in turn 22 Am.Jur. *False Imprisonment* § 2-3).   To prevail on a claim for false arrest/imprisonment, the plaintiff must demonstrate: "(1) the intentional detention of the person and (2) the unlawfulness of the detention."   *Id*. (quoting *Hodges v. Meijer, Inc.,* 717 N.E.2d 806, 809 (Ohio App. 1998)). Malicious prosecution is a common-law tort which recognizes a right to recover "for the misuse of civil and criminal actions as a means of causing harm."   *Id.* at 316 (quoting *Trussell v. Gen. Motors Corp*., 559 N.E.2d 732, 734 (Ohio 1990)).   The elements of a claim of malicious

36

prosecution are "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the [criminal] defendant." *Id.* (quoting *Trussell*, 559 N.E.2d at 734). An arrest based on probable cause is a lawful detention and therefore will defeat a false arrest/imprisonment claim. *Id.*

First, plaintiff does not allege that the City defendants played any role in instituting or continuing the prosecution against him, and his state law malicious prosecution claim should be dismissed for this reason. Second, plaintiff's false arrest, false imprisonment, and malicious prosecution claims are barred by the one-year statute of limitations set forth in Ohio Rev. Code § 2305.11. Third, assuming, *arguendo*, that plaintiff asserts valid state law claims, the City defendants have statutory immunity from plaintiff's state law claims. The Ohio Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.02, *et seq.*, provides statutory immunity from suit to police officers for governmental or proprietary functions unless, among other circumstances, the officer's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). Under Ohio law, provision or nonprovision of police services or protection and enforcement of the law are governmental functions for purposes of the immunity statute. *Carmichael v. City of Cleveland*, 881 F. Supp. 2d 833, 843 (N.D. Ohio 2012), *aff'd in part, vacated in part,* 571 F. App'x 426 (6th Cir. 2014) (citing Ohio Rev. Code § 2744.01(C)(1)(c), (C)(2)(a) and collecting cases). Ohio law defines "wanton misconduct" as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Jones v. Norwood*, No. C-120237, 2013 WL 454909, ¶ 43 (Ohio App. 1st Dist. Feb. 6, 2013) (quoting *Anderson v. City of Massillon,* 983 N.E.2d 266, 267 (Ohio 2012) (syll. ¶ 3) (approving and

following *Hawkins v. Ivy,* 363 N.E.2d 367 (Ohio 1977)).   Reckless conduct is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Stewart v. City of Euclid, Ohio*, 970 F.3d 667, 676-77 (6th Cir. 2020) (citing *Argabrite v. Neer*, 75 N.E.3d 161, 164 (2016)).   "Malicious purpose" is the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct.   *Jones*, 2013 WL 454909, ¶ 42 (citing *Chaney v. Norwood,* 937 N.E.2d 634, ¶ 11 (Ohio App. 1st Dist. 2011); *Cook v. City of Cincinnati,* 658 N.E.2d 814 (Ohio App. 1st Dist. 1995).   "Bad faith" evinces a "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id*. (citing *Cook*, 658 N.E.2d 814).

Here, Cincinnati police officers Drexelius and Martin were engaged in their official functions when they searched and seized plaintiff's property, participated in his arrest, and charged him with crimes.   Plaintiff has not alleged sufficient facts to show the defendant police officers do not have statutory immunity from liability on plaintiff's state law claims.   Plaintiff alleges only that Office Drexelius directed the Swat Team to place plaintiff in the police car, and he searched plaintiff's home and seized plaintiff's property without plaintiff's consent or a search warrant and without ever showing plaintiff a search warrant.   (Doc. 1, ¶¶ 31, 32).   Plaintiff alleges that Officer Martin directed that plaintiff be taken to the Justice Center and was advised by the HCPO to charge plaintiff with terrorism after they arrived at the Justice Center and waited there for some time.   *Id*., ¶¶ 33, 34.   While these allegations may be sufficient to support plaintiff's claims of unreasonable search and seizure and false arrest/false imprisonment

under the Fourth Amendment, they do not support a finding that defendants' actions were reckless, in bad faith, or malicious so as to deprive defendants of immunity under state law.  *See Radvansky*, 395 F.3d at 315-16 ("Ohio courts have found that even where a police officer's actions violate the arrestee's constitutional rights, the officer is not necessarily subject to tort liability," and when "the officer's conduct is 'not as thorough as it could have been,' his conduct is merely negligent, which is insufficient to 'remove the cloak of immunity.'"); *Mullins v. Cyranek*, 805 F.3d 760, 769 (6th Cir. 2015) (similar); *Chappell v. City of Cleveland*, 585 F.3d 901, 916 n. 3 (6th Cir. 2009) (similar).   Plaintiff does not allege facts which indicate the police officers "acted with the intent to harm him or with any ulterior motive."  *Radvansky*, 395 F.3d at 316.   Plaintiff alleges that defendants did not have a search warrant at the time of the search of his home and seizure of his property and that he was not immediately advised of the charge against him, but these facts do not allege "a complete lack of care nor an intentional deviation from a definite rule of conduct."  *Id*.   Plaintiff's state law claims against the City defendants should be dismissed based on their immunity from suit.

**5.   Motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by defendants James Bogan, McKinley Brown, Joseph Deters, Greater Cincinnati Fusion Center/Homeland Security (Fusion Center), Hamilton County, Ohio/Hamilton County Prosecutor's Office (HCPO), Katherine Pridemore, and Seth Tieger (the County defendants) (Doc. 47)**

The County defendants move to dismiss plaintiff's claims against them on the grounds that the HCPO and the Fusion Center are not *sui juris* and therefore are not capable of being sued; certain claims are barred by the applicable statute of limitations; and the complaint otherwise fails to state a claim for relief against these defendants.   (Doc. 47).

### i.    *Plaintiff's claims against defendant HCPO*

Defendants correctly contend that the HCPO is not an entity that is capable of being sued under § 1983.   Capacity to be sued in the United States district courts is governed by Fed. R. Civ. P. 17(b), which provides that the capacity of an entity such as a county or county agency to be sued is determined "by the law of the state where the court is located. . . ."   Under Ohio law, "a county prosecutor's office is a sub-unit of a county government and is not itself *sui juris.*" *Brown v. Lorain County Prosecutor's Off.,* No. 1:20-cv-691, 2020 WL 4475345, at *2 (N.D. Ohio Aug. 4, 2020) (citing *Lenard v. City of Cleveland,* No. 1:17-cv-440, 2017 WL 2832903, at *2-3 (N.D. Ohio June 30, 2017)).   Even if plaintiff's claim is construed as a claim against Hamilton County itself, it fails because plaintiff has not plausibly alleged that the County's own official policy or custom caused a deprivation of his constitutional rights.   *Id*. (citing *Lenard*, 2017 WL 2832903, at *3) (citing *Monell*, 436 U.S. at 692-94).   The HCPO should be dismissed from this suit.

### ii.    *Plaintiff's claims against defendant Fusion Center/Homeland Security (Doc. 47)*

Defendants assert in their motion for judgment on the pleadings that the Fusion Center is "a regional cooperative effort made up of the Hamilton County Sheriff's Office and the Department of Homeland Security (DHS)" that is "essentially an information sharing tool utilized by" the Sheriff's Office and DHS.   (Doc. 47 at 5).   Defendants contend that the Fusion Center is not *sui juris* to the extent it is a department of Hamilton County.   (*Id*., citing *Richardson v. Grady*, No. 77381, 2000 WL 1847588, at *2 (Ohio App. 8th Dist. Dec. 18, 2000) (police department was a department of the City of Cleveland, and therefore was not *sui juris*).

*See also Barrett v. Wallace,* 107 F. Supp. 2d 949, 954-55 (S.D. Ohio 2000) (citing *Batchik v. Summit County Sheriff's Dept.,* No. 13783, 1989 WL 26084, at *1 (Ohio Ct. App. Mar. 15, 1989)) (Ohio case law holds that a county sheriff's office is not a legal entity capable of being sued).

It is not clear from the complaint or the parties' filings whether the Fusion Center is correctly characterized as a department of Hamilton County or as part of the Hamilton County Sheriff's Office.   However, it is not necessary to make this determination because plaintiff has not stated a plausible claim against the Fusion Center in the complaint under any theory of liability.   Plaintiff generally alleges in the complaint that the City and County defendants, including the Fusion Center, "created and brought fraudulent charges against Plaintiff for [personal] reasons by committing illegal arrest, illegal search and seizure, illegal/false imprisonment, illegal detention, illegal profiling, illegal GPS Tracking, Menacing by Stalking and malicious prosecution against Plaintiff."   (Doc. 1, ¶ 64).   However, the only factual allegation that plaintiff makes about the Fusion Center is that according to the testimony McKinley Brown gave at plaintiff's criminal trial, the Fusion Center issued an "Alert/Bulletin" to "law enforcement/fusion centers/homeland security" on April 15, 2015 at the request of McKinley Brown and the HCPO due to threats plaintiff had made against Judge Ghiz and police officers.   (Doc. 1, ¶ 62).   This barebones factual allegation is insufficient to state a plausible claim for violation of plaintiff's rights under federal or state law.   The Fusion Center should be dismissed from the lawsuit.

### iii. Plaintiff's First Amendment claims against Deters and McKinley Brown (Count I)

Defendants Deters and McKinley Brown contend that plaintiff's First Amendment claim against them is barred by the two-year statute of limitations that governs § 1983 claims in Ohio. (Doc. 47 at 6-7). Plaintiff does not allege that Deters or McKinley Brown committed any unlawful retaliatory actions within two years of the date plaintiff filed this lawsuit. Plaintiff's First Amendment claims alleged in Count I against these defendants are barred by the statute of limitations and should be dismissed.

### iv. Plaintiff's claims for malicious prosecution against the County Prosecutors (Counts V, VII)

Defendants Deters, Pridemore, and Tieger (County Prosecutors) contend they are entitled to absolute immunity from liability on plaintiff's claims for malicious prosecution. (Doc. 47 at 8-9). Prosecutors are generally immune from liability under § 1983 "for prosecutorial functions intimately associated with initiating or presenting the State's case." *Drake v. Howland*, 463 F. App'x 523, 525 (6th Cir. 2012) (citing *Imbler v. Pachtman,* 424 U.S. 409, 427-28 (1976)). "[I]nvestigative" or "administrative" functions unrelated to advocacy such as giving legal advice (*Burns v. Reed,* 500 U.S. 478, 492 (1991)), holding a press conference (*Buckley v. Fitzsimmons,* 509 U.S. 259, 276-78 (1993)), or acting as a complaining witness (*Kalina v. Fletcher,* 522 U.S. 118, 129-31 (1997)), are protected only by qualified immunity. *Id.* (citing *Van de Kamp v. Goldstein,* 555 U.S. 335, 342-43 (2009)). *See also Nouri v. County of Oakland*, 615 F. App'x 291, 301 (6th Cir. 2015) (defendant prosecutor was entitled to absolute immunity where each of the claims stemmed from "the core activity protected by absolute immunity - 'initiating a prosecution and in presenting the State's case[.]'"). This same immunity is extended to

42

prosecutors under Ohio law, and the Ohio rules governing prosecutorial immunity mirror the federal rules: in Ohio, "prosecutors are considered 'quasi-judicial officers' entitled to absolute immunity granted judges, when their activities are 'intimately associated with the judicial phase of the criminal process.'"  *Beckett v. Ford*, 384 F. App'x 435, 452 (6th Cir. 2010) (citing *Willitzer v. McCloud,* 453 N.E.2d 693, 695 (Ohio 1983) (quoting *Imbler,* 424 U.S. at 430)).

The County prosecutors named as defendants in this lawsuit are entitled to absolute immunity from liability on plaintiff's claims for malicious prosecution.   Plaintiff alleges that the County defendants "fraudulently" brought the criminal case against him for purposes of harassment and were permitted to relitigate old civil/criminal cases against him.   (Doc. 66 at 3). Bringing charges and making decisions about evidence to present are core functions "intimately associated with initiating or presenting the State's case."  *Drake,* 463 F. App'x at 525. Defendants are entitled to immunity for the performance of these functions regardless of whether they acted maliciously or in bad faith.  *Imbler*, 424 U.S. at 427-428.   Plaintiff's malicious prosecution claims against the County prosecutors should be dismissed.

### v. *Plaintiff's claim against McKinley Brown*

Defendant McKinley Brown contends that to the extent plaintiff brings a claim against him for testifying against plaintiff at his trial, defendant is entitled to absolute immunity.   (Doc. 47 at 11).   Plaintiff alleges that McKinley Brown, an HCPO investigator, testified and presented exhibits at his criminal trial.   (Doc. 1, ¶¶ 61-63).   Plaintiff alleges his testimony showed that McKinley Brown and the HCPO asked defendants Cincinnati Police Department and the Fusion Center to issue an Alert (Bulletin) on plaintiff prior to his arrest based on threats plaintiff made against Judge Ghiz and police officers; that "it was totally up to" Martin to investigate and bring

criminal charges against plaintiff; and that the Cincinnati Police Department "crashed Plaintiff's truck" and was willing to settle a case to repair plaintiff's truck, but it has refused to do so to date. (*Id*., ¶¶ 62, 63).

A trial witness "has absolute immunity with respect to any claim based on the witness' testimony" under § 1983. *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983); *see also LidoChem, Inc. v. Stoller Enters., Inc.*, No. 10-1686, 2012 WL 4009709, at *12 (6th Cir. Sept. 12, 2012)). Immunity is offered to further the "truth-seeking process" and ensure that a witness will not be reluctant to testify or "'shade his testimony in favor of the potential plaintiff' for 'fear of subsequent liability.'" *Rehberg,* 566 U.S. at 367. Ohio also provides absolute immunity to witnesses for statements made during the course of judicial proceedings and relevant to those proceedings. *Willitzer v. McCloud*, 453 N.E.2d 693, 694-695 (Ohio 1983). Furthermore, providing false testimony in a judicial proceeding, even if it is alleged that the witness knowingly gave false testimony, "does not give rise, either at common law or by statute, to a civil action for damages resulting from such testimony." *Schmidt v. State Aerial Farm Statistics, Inc*., 403 N.E.2d 1026, 1026, syll. (Ohio App. 6th Dist. 1978). Thus, any claim plaintiff brings against McKinley Brown based on testimony he gave at plaintiff's trial should be dismissed on the ground defendant is immune from civil suit based on his testimony. Plaintiff has not stated a claim for relief against defendant McKinley Brown under any other constitutional provision or theory of liability under state law. Defendant McKinley Brown should be dismissed from this action.

### vi. *Plaintiff's claims against the County defendants for negligent and intentional infliction of emotional distress (Count VIII)*

Plaintiff's claims against the County defendants for negligent infliction of emotional

distress should be dismissed for the same reasons plaintiff has failed to state a claim for relief under these theories of liability against the City defendants.   Plaintiff does not allege that he witnessed injury to another, and his allegations against the County defendants do not rise to the level of conduct that is "outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community."   *See Talley*, 542 F.3d at 1111.   These claims against the County defendants should be dismissed.

### vii.   *Plaintiff's claims against defendant James Bogan*

Defendants move to dismiss the claims against James Bogan, a court-appointed attorney who represented plaintiff early in his criminal case, on the grounds Bogan was not acting under color of law under § 1983 and he is immune from liability under Ohio Rev. Code § 2744.02. (Doc. 47 at 15-17).

Plaintiff has not stated a claim for relief against defendant Bogan.   Plaintiff complains about actions Bogan took in his capacity as plaintiff's court-appointed attorney.   Plaintiff alleges that Bogan was the same attorney who represented former Judge Hunter (Doc. 1, ¶ 54); Bogan gave plaintiff poor representation in retaliation for a filing plaintiff made on March 17, 2014 in former Judge Hunter's criminal case, Case No. B1400110, which allegedly exposed illegal conduct by defendants Deters and McKinley Brown against Hunter; and Judge Dinkelacker and Bogan harassed plaintiff for filing motions against them by having plaintiff sent to Twin Valley and asking that he be evaluated and committed for one to two years for "mental retardation."   (*Id*., ¶ 57).

A criminal defense attorney does not act under color of state law when performing his role as counsel for the accused.   *Floyd v. County of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012)

(public defender could not be liable in pro se § 1983 suit for ineffective assistance of counsel claim brought by former client); *Dunning v. Yuetter*, 12 F. App'x 282, 284 (6th Cir. 2001) (criminal defense attorneys did not act under color of state law for purpose of § 1983). This is true whether the criminal defense attorney is a public defender or private attorney. *Alexander v. Ohio*, No. 1:16-cv-1051, 2016 WL 11594174, at *1 (N.D. Ohio July 20, 2016) (citing *Jordan v. Kentucky*, No. 3:09-cv-424, 2009 WL 2163113, at *4 (6th Cir. July 16, 2009) (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)). Thus, plaintiff's claims against Bogan under § 1983 should be dismissed.

Plaintiff alleges that Bogan is liable for negligent and intentional infliction of emotional distress. (Doc. 1, Count VII). Defendant Bogan argues that the state law claims against him should be dismissed because he is immune from liability under the Ohio tort immunity statute, Ohio Rev. Code § 2744.02. (Doc. 47 at 16-17). Defendant has not cited any authority for the proposition that a private attorney who is appointed to represent a criminal defendant is entitled to statutory immunity under Ohio law when performing the services of a public defender. (*Id.* at 17). Nonetheless, the state law claims should be dismissed because plaintiff has not stated a plausible claim for relief against defendant Bogan under Ohio law. Plaintiff makes only barebones allegations about Bogan's actions and attributes improper motives to Bogan without citing facts which, if accepted as true, would plausibly suggest that Bogan acted unlawfully with an intent to harm plaintiff. Plaintiff's state law claims against defendant Bogan should therefore be dismissed for failure to state a claim for relief. Bogan should be dismissed as a party to this lawsuit.

### viii. Plaintiff's claims for punitive damages against the County defendants

46

Defendants Hamilton County and the Hamilton County Sheriff's Office contend that plaintiff cannot recover punitive damages from them because such damages cannot be awarded against a political subdivision in a § 1983 action.   (Doc. 47 at 17).   Because the Court finds that plaintiff's claims against these defendants should be dismissed, it is not necessary to address plaintiff's request for punitive damages against them.

### 6.   Motion for judgment on the pleadings by Court Clinic/Central Clinic and Carla Dreyer (Doc. 57)

Defendants Court Clinic and Dr. Dreyer move for judgment on the pleadings under Fed. R. Civ. P. 12(c) on the ground plaintiff has failed to state a claim for relief against them.   (Doc. 57).   Defendants assert that plaintiff specifically names them in two counts of the complaint: Count VIII (negligent/intentional infliction of emotional distress) and Count IX (false imprisonment/false arrest).   (*Id*. at 3).   Defendants contend that plaintiff does not allege facts that satisfy the elements of a claim for relief under any of these theories of liability.

Plaintiff argues in response that he has stated a claim for relief against these defendants. (Doc. 59).   He alleges that the Court Clinic and Dr. Dreyer never performed a mental evaluation but that the reports from the Court Clinic and Dr. Dreyer were used in his retrial in October/November 2018.   (*Id*. at 4-6).   Plaintiff also asserts that he alleged in his complaint that long after his detention at the Summit/Twin Valley mental hospitals ended, Central Clinic and Deters "continued with excessive mental evaluations for harassment. . . ."   (*Id*. at 6). Plaintiff also alleges that the City and County defendant used statements "made in Dreyer's mental evaluation report since June 1, 2016 to the Court (Delusional/Paranoid) and to the Jury, trying to obtain a guilty verdict of terrorism" against plaintiff in 2018 in violation of his Fifth Amendment rights.   (*Id*.).

47

In the complaint, plaintiff alleges that defendant Court Clinic is a private contractor to the courts which exercises final policymaking authority for all doctors, other employees, and staff and that defendant Dreyer was employed by the Court Clinic as a psychologist.   (Doc. 1, ¶¶ 16, 17).   He alleges the Court Clinic's failure to perform a mental evaluation clearly proves plaintiff's confinement in a mental hospital was illegal.   (*Id.,* ¶ 46).   Plaintiff alleges that on or around May 20, 2016, defendant Dreyer visited plaintiff to perform a court-ordered mental evaluation, and he indicates he was not able to hear Dreyer but she did not return to perform an evaluation at a later date despite stating she would do so.   (*Id*., ¶ 38).   Plaintiff alleges that Judge Winkler ordered that he be admitted to Summit on June 1, 2016 based on a report Dr. Dreyer had filed that morning, which plaintiff had not seen and was not given an opportunity to rebut or appeal.   (*Id*., ¶ 39; *see* Case No. C-160550).   Plaintiff alleges that his attorney Stineman, the HCPO, Judge Winkler, the Court Clinic, and Dreyer acted in concert and that Dreyer "didn't have any true facts and failed to perform a mental evaluation."   (*Id*., ¶ 40). Plaintiff alleges that on or around July 15, 2016, defendant Court Clinic and Dr. Hillman performed a mental evaluation of plaintiff at Summit in an allegedly obvious effort to "cover-up" Dr. Dreyer's fraudulent report filed on June 1, 2016 in *State of Ohio v. Terry Brown*, B 1602390. (*Id*., ¶ 45).   Plaintiff alleges that Dr. Hillman took documents from him that had plaintiff's handwritten notes on them and refused plaintiff's request to have the mental evaluation she performed be audio- and video-recorded.   (*Id*., ¶ 46).   Plaintiff alleges the Court Clinic is liable for false/illegal imprisonment at this point because "they were to demand the Court to release Plaintiff from Summit due to Dr. Dreyer's fraudulent report filed on June 1, 2016."   (*Id.*).

Liberally construing the allegations of the complaint, defendants Court Clinic and Dreyer

48

are entitled to judgment on the pleadings.    Plaintiff's allegations do not state a plausible claim

for relief against these defendants under any theory of liability.    First, plaintiff does not allege

that he "witnessed and/or experienced a real or impending danger to another" so as to state a

claim for negligent infliction of emotional distress.    *See Stout*, 721 F. App'x at 473.    Second,

plaintiff has not alleged facts to support a claim of intentional infliction of emotional distress

against the Court Clinic or Dreyer.    Plaintiff does not deny that Dreyer saw him and completed

a report which she presented to the court.    Further, plaintiff concedes that Dr. Hillman saw him

approximately two months later and evaluated plaintiff, which plaintiff objects to only because

Dr. Hillman did not consent to have the evaluation recorded.    These allegations do not support a

finding that the Court Clinic's evaluation process or Dr. Dreyer's conduct was extreme,

outrageous, or beyond all bounds of decency as required to support a claim for intentional

infliction of emotional distress.    *See Talley,* 542 F.3d at 1110.

   Third, plaintiff has not stated a claim for false imprisonment against the Court Clinic or

Dreyer.    Defendants contend that plaintiff's claim against them for false imprisonment is time-

barred because plaintiff filed the claim beyond the one-year period of limitations set forth in

Ohio Rev. Code § 2305.11, and plaintiff has not alleged facts to support a claim of false

imprisonment.    (Doc. 57 at 6).    The one-year statute of limitations provided in Ohio Rev. Code

§ 2305.11 applies to a claim brought for false imprisonment under Ohio law.    *Mayes v.

Columbus*, 664 N.E.2d 1340, 1352 (Ohio App. 10th Dist. 1995) (citations omitted).    Plaintiff

alleges that the Court Clinic and Dreyer were asked to evaluate him and submitted reports to the

court in May and June 2016, Dr. Hillman of the Court Clinic evaluated plaintiff at Summit in

July 2016, and plaintiff was committed to Summit as a result.    Plaintiff did not file this action

until more than three years after these actions. Although plaintiff alleges the reports generated by the Court Clinic were subsequently used against him at his retrial in October and November 2018 in violation of his Fifth Amendment rights, plaintiff does not allege facts to indicate that either the Court Clinic or Dreyer participated in the prosecution of his trial and can be held liable for any violation of his Fifth Amendment rights. Plaintiff's state cause of action for false imprisonment is therefore time-barred and should be dismissed.

Finally, defendants Court Clinic and Dreyer argue that plaintiff has not stated a claim against them under § 1983 because they are private parties, not state actors, and these claims are time-barred by the applicable two-year statute of limitations. The Court need not address whether these defendants could be deemed to be state actors. Liberally construing the allegations of the complaint, the conduct plaintiff challenges occurred no later than July 2016, and plaintiff did not file this suit until more than three years later in November 2019. (Doc. 1, ¶¶ 38-39, 45-46). Plaintiff's § 1983 claims against the Court Clinic and Dr. Dreyer are therefore time-barred by the two-year statute of limitations that governs § 1983 claims in Ohio and should be dismissed on this basis. Plaintiff has failed to state a claim for relief against defendants Central Clinic and Dr. Dreyer, and these defendants should be dismissed from the case.

### 7. Motion for judgment on the pleadings by Summit Behavioral HealthCare, Elizabeth Banks, and Dr. Adelaida Fernandez (Summit defendants) (Doc. 68)[7]

The Summit defendants identify the claims that potentially apply to them as Count III (§ 1983 claim for false arrest/unlawful detention/false imprisonment in violation of plaintiff's Fourth Amendment rights); Count IV (§ 1983 claim for excessive force based on the forced

---

[7] Defendants state they bring their claims under Rule 12(b)(1), but their motion, which they filed after they had answered the complaint, is properly brought under Fed. R. Civ. P. 12(c). (Doc. 35). The standard that governs Rule 12(c) motions therefore applies.

50

administration of medication in violation of plaintiff's Fourth Amendment rights); Count VIII (state law claims for negligent and intentional infliction of emotional distress); Count IX (state law claim for false imprisonment/false arrest); and Count XII (punitive damages claim).  They move to dismiss these claims on the grounds they are barred by the statute of limitations, plaintiff's complaint does not state a plausible claim for relief, the Court does not have jurisdiction over the state law claims, and defendants are entitled to immunity from suit.  (Doc. 68).

Plaintiff's claims against the Summit defendants are based on his evaluation, involuntary confinement, and treatment pursuant to Ohio Rev. Code § 2945.38, including forced administration of medication at Summit by order of the Hamilton County Court of Common Pleas between June 1, 2016, when plaintiff was found incompetent to stand trial in his criminal case, and May 30, 2017, when the Court of Common Pleas found that plaintiff was restored to competency and ordered that he be released from Summit.  (Doc. 1, ¶¶ 39, 41, 52).  Plaintiff alleges in the complaint that when he arrived at Summit on June 7, 2016 pursuant to an order by Judge Winkler, defendant Dr. Fernandez began giving plaintiff a mental evaluation.  (*Id*., ¶ 41).  Plaintiff stopped her and told her he had been ordered to be illegally held in a mental institution.  (*Id*.).  He learned later the order was not appealable and he was forced to stay at Summit illegally for about one year.  (*Id*.).  On June 23, 2016, Dr. Fernandez informed plaintiff that he was mentally ill and she had been told to list his medications due to civil actions he had filed against the Cincinnati Police/Hamilton County Sheriff's Office.  (*Id*., ¶ 42).  Plaintiff then filled out a waiver for Dr. Fernandez/Summit to contact his family and attorney to obtain evidence "in dismissing the criminal charge of terrorism" and told her that he wanted his

51

discussions with her "taped." (*Id*.).   On July 8, 2016, Fernandez confirmed she had received

discovery showing he had committed the crime of terrorism by making certain threats.   (*Id*., ¶

43).   Dr. Fernandez testified in plaintiff's criminal case on August 10, 2016 and denied she had

ever received discovery from the HCPO to determine if plaintiff was mentally ill and had

received medications, which plaintiff claims was testimony that had "obviously" been "coached"

by the prosecution.   (*Id*., ¶ 48).   Judge Winkler granted Dr. Fernandez/Summit's "action" on

August 10, 2016 (an apparent reference to his order authorizing the involuntary administration of

medication- *see* Doc. 59-1 at 8).   (*Id*., ¶ 49).   Plaintiff alleges that after Judge Winkler

disqualified himself from the case and plaintiff exposed Dr. Fernandez's alleged perjury to the

court in plaintiff's appellate action, defendants arranged for another doctor from Summit to find

that plaintiff was still incompetent to stand trial so that plaintiff would remain at Summit an

additional two years.   (*Id*., ¶ 51).   However, another doctor overruled Dr. Fernandez's

findings, and plaintiff was found competent and released from Summit on May 30, 2017.   (*Id*.,

¶ 52).

Plaintiff characterizes his claims against the Summit defendants as claims for violations

of his due process rights based on their alleged failure to comply with Ohio Rev. Code §§

5122.10/5122.11, which govern procedures for taking into custody an individual who is believed

to represent a substantial risk of physical harm to himself or others and hospitalizing him on an

emergency basis.   (Doc. 78 at 3).   Plaintiff alleges that the Summit defendants did not comply

with the Ohio statutes by filing an affidavit under § 5122.10 to initiate court commitment

proceedings within three days after he was involuntarily committed to Summit in early June

2016, and instead they waited until August 10, 2016 to file a notice with the court.   (*Id*.).

Plaintiff also alleges that the County defendants violated his rights by sending "fraudulent discovery" to the Summit defendants on around July 8, 2016 and failing to file a discovery response in his criminal case until August 12, 2016 (*see* Doc. 59-1 at 8), and the Summit defendants in turn violated his rights by not giving him copies of discovery from the criminal case despite knowing he was the defendant in that case.[8] (Doc. 78 at 4). Plaintiff alleges that his confinement at Summit was illegal because it was not pursuant to state law, and the Summit defendants acted outside their jurisdiction and illegally based on instructions by the County defendants. (*Id.*). As best the Court is able to discern, plaintiff alleges that Dr. Fernandez accepted false "discovery" or information from the County defendants, which is reflected in her progress notes filed with the Ohio Department of Mental Health and Addiction Services. (*Id.* at 5, citing Exh. A, Dr. Fernandez's Progress Notes). Those notes reflect that plaintiff had made threats against the "AAA" and the "Ohio Department of Public Safety," which were not the basis for any criminal charges against plaintiff, and plaintiff contends that the Summit defendants accepted that false information so that they could wrongfully declare plaintiff to be mentally ill and forcibly administer medicine to him. (*Id.* at 6). Plaintiff contends that the Summit defendants' acceptance of this "fraudulent discovery" from the County defendants in order to declare him mentally ill constituted an "invasion of privacy" which violated his First, Fourth, Fifth, and Fourteenth Amendment rights. (*Id.*).

Further, plaintiff asserts that he presented a claim for violation of his Fifth Amendment rights in the complaint based on a violation of Ohio law. (*Id.* at 5). Plaintiff alleges that the Summit defendants violated Ohio Rev. Code § 2945.371(J) and his Fifth Amendment rights by using

---

[8] The state criminal record shows that the state filed its response to plaintiff's demand for discovery in his criminal case on August 12, 2016. (Doc. 59-1 at 8).

fraudulent information obtained from the County defendants to find plaintiff was mentally ill and

forcibly administer medication to him.    *Id*. (citing *State v. Harris*, 28 N.E.2d 1256, 1263-64 (Ohio

2015)) ("[N]o statement that a defendant makes in an evaluation or hearing under divisions (A) to

(H) of this section relating to the defendant's competence to stand trial or to the defendant's mental

condition at the time of the offense charged shall be used against the defendant on the issue of guilt

in any criminal action or proceeding, but, in a criminal action or proceeding, the prosecutor or

defense counsel may call as a witness any person who evaluated the defendant or prepared a report

pursuant to a referral under this section.    Neither the appointment nor the testimony of an examiner

appointed under this section precludes the prosecutor or defense counsel from calling other witnesses

or presenting other evidence on competency or insanity issues."); *see also Harris,* 28 N.E.2d at 1264

(citing *State v. Franklin,* 776 N.E.2d 26, ¶ 64 (Ohio 2002)) (the statute preserves the state's rights to

use evidence from a defendant's psychiatric evaluations for other purposes, such as on the issue of

insanity).      .

Plaintiff's claims against the Summit defendants should be dismissed.    Plaintiff's only

allegation against defendant Banks is that she refused to release him from Summit at his request

based on fraudulent documents the HCPO had sent and refused to move him to another unit

within Summit.    (Doc. 1, ¶ 44).    Plaintiff's generalized allegation against Banks does not state

a plausible claim for violation of his federal or state rights.    As director of Summit, Banks

cannot be held liable vicariously liable for the acts of Summit employees under her supervision.

*See Gregory*, 444 F.3d at 751 (supervisory liability under § 1983 must be based upon more than

a mere right to control employees and must be based on more than simple negligence).    Plaintiff

has not alleged that Banks was directly involved in his care and has not alleged facts to show that

his claims against Banks are based on more than her right to control employees in her role as

director of Summit.

Plaintiff also has not stated a plausible claim for relief against Dr. Fernandez or Summit. First, defendants argue that plaintiff's claims related to Dr. Fernandez's testimony in the criminal proceedings and request for a court order to involuntarily medicate plaintiff while he was at Summit fail to state a claim for relief against her. (Doc. 68 at 10-11). Plaintiff has not stated a claim for relief against Dr. Fernandez or Summit under the Fifth Amendment. These defendants cannot be held liable for alleged violations of plaintiff's constitutional rights to the extent the state may have introduced their testimony at a criminal proceeding on the issue of plaintiff's guilt.[9] Further, plaintiff has not stated a claim for excessive force with respect to involuntary medication administration and has not alleged facts to support a finding that the request to involuntarily medicate him otherwise violated his constitutional rights. These claims should be dismissed.

Next, plaintiff's remaining § 1983 claims against the Summit defendants are barred by the applicable two-year statute of limitations set forth in Ohio Rev. Code § 2305.10. (Doc. 68 at 6-7, citing *Browning*, 869 F.2d 989). Plaintiff was or should have been "aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of [the Summit defendants'] wrongful conduct" giving rise to his false imprisonment and excessive force claims during the course of his confinement at Summit no later than May 30, 2017, when he was released from Summit *Ball v. Union Carbide Corp.*, 385 F.3d 713, 721 (6th Cir. 2004) (citation omitted). Plaintiff therefore had two years from that date, or until May 30, 2019, to file his § 1983 claims against the Summit defendants. (*Id.* at 7-8). Plaintiff filed his § 1983

---

[9] The Court further notes that Dr. Fernandez is absolutely immune from liability for testimony given during the trial. *Briscoe*, 460 U.S. 325.

claims more than two years after his release from Summit in November 2019. His § 1983 claims against the Summit defendants are therefore time-barred.[10]

Third, the Summit defendants argue that plaintiff has failed to state a claim for negligent and intentional infliction of emotional distress because where the facts alleged give rise to a more conventional tort action with a "clearly delineated [] statute of limitations," the statute of limitations for the more conventional tort action should govern. (Doc. 68 at 11). In the alternative, they contend that the facts alleged by plaintiff do not show conduct that is extreme or outrageous so as to give rise to a claim for negligent or intentional infliction of emotional distress. (*Id*. at 12-13).

As best the Court is able to discern, plaintiff bases his claims of negligent and intentional infliction of emotional distress on allegations that Dr. Fernandez declared plaintiff mentally ill based on information from the County defendants that she knew was false and after attempting to force plaintiff to confess to a crime he never committed, and by failing to comply with Ohio statutory deadlines. (Doc. 78 at 6). Plaintiff's allegations do not support a plausible claim for negligent or intentional infliction of emotional distress. Plaintiff does not allege that the Summit defendants engaged in conduct that was outrageous, extreme, beyond all possible

---

[10] The Summit defendants acknowledge that under Ohio Rev. Code § 2305.16, during the time that a person was adjudicated as having an unsound mind or who was confined to an institution or hospital under a diagnosed condition which rendered the person of unsound mind, the statute of limitations for certain claims can be tolled until the disability is removed. (Doc. 84 at 2, citing *Lewarski v. Columbus Dev. Ctr.*, 531 N.E.2d 1341, 1341 (Ohio Ct. App. 1987)) ("The disability is removed, and the statute of limitations commences to run, when a valid court order restoring competency is issued."). There is no indication that the tolling statute would impact the statute of limitations on plaintiff's § 1983 claims against any defendant in this case. The trial court found that plaintiff was competent for purposes of trial and he was released from Summit on May 30, 2017. (Doc. 1, ¶ 52). Summit indicates that plaintiff was subsequently committed to another state psychiatric hospital, Twin Valley Behavioral Healthcare, and was released on September 21, 2017 when he again regained competency. (Doc. 84 at 2, citing Doc. 1, ¶ 58; *see also* Doc. 59-1 at 6). Assuming the statute of limitations was tolled on plaintiff's § 1983 claims during his detention at these facilities, plaintiff's claims are still time-barred because he filed his complaint more than two years after he was declared competent and released from Twin Lakes.

bounds of decency, and utterly intolerable in a civilized community, or that their conduct proximately caused his psychic injury. *See Talley*, 542 F.3d at 1110. Plaintiff appears to base his claims in part on Dr. Fernandez's alleged failure to comply with the timelines set forth in Ohio Rev. Code §§ 5122.10 and 5122.11, but plaintiff did not allege in the complaint that defendants violated these statutes. (Doc. 1). Further, as defendants note, these statutes are inapplicable to plaintiff's false imprisonment claims because he was committed to Summit for purposes of restoring competency pursuant to Ohio Rev. Code § 2945.38 and not on an emergency hospitalization basis under Ohio Rev. Code § 5122.10. (Doc. 84 at 3). To the extent plaintiff seeks to hold the Summit defendants liable for false imprisonment under state law, his claim is barred by the one-year statute of limitations in Ohio Rev. Code § 2305.11, which commenced on the date plaintiff was detained, June 1, 2016. (Doc. 68 at 13). Plaintiff did not file his complaint until more than three years after that date and more than two years after his release from Summit on May 30, 2017. (Doc. 1, ¶ 52). Therefore, plaintiff's claim falls outside the one-year statute of limitations.

Finally, defendant Summit has sovereign immunity from suit on plaintiff's claims against it under state law. Summit is "a facility owned by the State of Ohio, Department of Mental Health . . ., designed to serve the mentally and physically disabled." *Demmons v. Summit Behavioral Healthcare*, No. 1:19-cv-882, 2019 WL 7040425, at *2 (S.D. Ohio Dec. 3, 2019), *report and recommendation adopted,* 2019 WL 7020385 (S.D. Ohio Dec. 20, 2019). Thus, suits against Summit and against Summit employees in their official capacity for monetary damages are barred. *Arbino v. State of Ohio*, No. 1:12-cv-203, 2012 WL 1756856, at *2 (S.D. Ohio April 2, 2012) ("The State of Ohio is immune from suit in . . . federal court.").

The Summit defendants should be dismissed from this lawsuit.

**9. Defendant Jerome Stineman's motion for judgment on the pleadings (Doc. 72) and motions to strike by Stineman (Doc. 81) and plaintiff (Doc. 82)**

Defendant Jerome Stineman moves for judgment on the pleadings on plaintiff's claims against him. (Doc. 72). Stineman also moves to strike portions of plaintiff's memorandum in response to his motion under Fed. R. Civ. P. 12(f). (Doc. 81 at 4-5). Stineman argues that plaintiff has attached exhibits to his memorandum that are not part of the pleadings and are not properly considered in connection with a Rule 12(c) motion. The first is a "NGRI Plea" filed by Stineman in plaintiff's criminal case on May 27, 2016, before Stineman withdrew as counsel in the case, which plaintiff has offered in support of a fraud claim against Stineman that is not pled in the complaint. (Doc. 77, Exh. A). The second exhibit is an October 1, 2019 letter plaintiff sent to the Hamilton County Public Defender's office re: "Jerome P. Stineman, attorney" seeking to "terminate/stop all contracts with Jerome P. Stineman, attorney as a paid court-appointed attorney here in Hamilton County/State of Ohio." (*Id.*, Exh. B). Plaintiff cites the letter to show the statute of limitations does not bar his claims. Stineman also argues that requests for admissions which plaintiff has included in his response should be stricken. In response, plaintiff contends that Stineman's motion for judgment on the pleadings should be stricken from the record because he has not cited accurate dates and facts and has not answered plaintiff's "true claims." (Doc. 83). Plaintiff argues he should be able to submit his exhibits and requests for admissions in order to set out the facts in detail and provide notice of his claims. (*Id.*).

Fed. R. Civ. P. 12(f) allows the Court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Plaintiff's exhibits are not material to the claims presented in the complaint against defendant Stineman, and plaintiff's requests for admissions are not properly filed with the Court. *See* Fed. R. Civ. P. 5(d)(1). The

58

Court therefore will not consider the extraneous materials Stineman seeks to strike from plaintiff's response.

Stineman, a private attorney who served as plaintiff's court-appointed defense attorney in his criminal trial for approximately one month in May 2016, after plaintiff was arrested on May 3, 2016 (Doc. 1, ¶ 36), argues that plaintiff has failed to state a claim for relief against him. (Doc. 72).   The public record and the complaint show that plaintiff underwent a competency evaluation at his attorney's request, which resulted in a finding that plaintiff was incompetent. (*Id*. at 3; *see* Doc. 37-2, Exh. B).   Stineman stipulated to the report and finding by the evaluating psychologist, and plaintiff was sent to Summit for the purpose of being restored to competency.   (*Id*.).   Plaintiff alleges in the complaint that Stineman did not mention to Judge Winkler at the competency hearing that Stineman had received a video recording via email which proved the Cincinnati Police had stalked and menaced plaintiff, and Judge Winkler ordered that plaintiff be admitted to Summit based on a report Dr. Dreyer had filed that morning which plaintiff had not seen and was not given an opportunity to rebut.   (Doc. 1, ¶ 39).   While at Summit, plaintiff asked Stineman to challenge the incompetency finding, which prompted Stineman to file a motion to withdraw as plaintiff's counsel and to appoint substitute counsel on June 17, 2016 based on a conflict in further representation.   (Doc. 37-2; Doc. 59-1 at 9). Plaintiff alleges that Stineman withdrew as plaintiff's counsel on June 17, 2016 on the ground the facts proved plaintiff had committed terrorism, even though the HCPO did not file discovery until August 12, 2016.   (Doc. 1, ¶ 40).   Plaintiff alleges he later learned when he attempted to file an appeal that Stineman "had Judge Winkler not make his order an appealable order." (Doc. 1, ¶ 41; *see* Case No. C-160550).   Plaintiff alleges that Stineman's actions show he was

acting in concert with the HCPO, Dr. Dreyer/Court Clinic and Judge Winkler, and he did not have the true facts.   (Doc. 1, ¶ 40).

Defendant Stineman moves to dismiss plaintiff's claims against him on the grounds he is a private attorney and not a state actor who can be sued under § 1983.   (Doc. 72 at 5, 7).   As explained earlier, a criminal defense attorney does not act under color of state law in his role as counsel for the accused.   *See Floyd*, 454 F. App'x at 497; *Dunning*, 12 F. App'x at 284. Plaintiff's § 1983 claims against defendant Stineman should therefore be dismissed for failure to state a claim for relief.

Plaintiff has also failed to state a claim for relief against Stineman under any state law theory of liability.   Plaintiff brings state law claims against "defendants" for malicious prosecution, negligent and intentional infliction of emotional distress, false arrest/false imprisonment, and invasion of privacy.[11]   Stineman's alleged acts of requesting a competency hearing, stipulating to the results of the evaluation, failing to disclose a video recording of police activity at the competency hearing, and filing a motion to withdraw based on a conflict of interest when plaintiff sought to challenge the competency finding to which Stineman had stipulated do not support a plausible claim for violation of plaintiff's rights under state law. Stineman should be dismissed from this case.

### C.   Plaintiff's motions for sanctions against the County and City defendants (Docs. 49, 51)

Plaintiff moves the Court to impose sanctions on the County and City defendants and their counsel under Fed. R. Civ. P. 11 for allegedly filing "fraudulent claims" in this Court.

---

11  Plaintiff indicates in his response that he also brings a "fraud" or "fraudulent concealment" claim against Stineman for entering a "not guilty by reason of insanity" plea on plaintiff's behalf without plaintiff's consent. (Doc. 77 at 4).   It is not necessary to address this claim because plaintiff did not raise it in the complaint.

(Docs. 49, 51).   Defendants argue that the Court must deny the motions because plaintiff has not

complied with the safe harbor provisions of Rule 11.   (Docs. 56, 64).   They assert that plaintiff

did not notify counsel and serve the motion on counsel before filing the motions as required

under the Rule.   (*Id.*, citing *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997);

*Nieves v. City of Cleveland*, 153 F. App'x 349, 353 (6th Cir. 2005); *Jodway v. Orlans, PC*, 759

F. App'x 374, 384 (6th Cir. 2018)).   These cases find that sanctions cannot be imposed under

Rule 11 unless the movant has satisfied the rule's "safe-harbor" provisions, which provide that a

"motion for sanctions is not . . . to be filed until at least 21 days (or such other period as the court

may set) after being served" on opposing counsel and should not be filed with the court if

"during this period, the alleged violation is corrected, as by withdrawing (whether formally or

informally) some allegation or contention. . . ."   *See* 1993 Advisory Comm. Note to Fed. R. Civ.

P. 11.   They further contend that they have responded to all of plaintiff's claims that can

reasonably be construed as attributable to their conduct, and plaintiff had not identified any

frivolous conduct by defendants that would warrant sanctions.   (Docs. 56, 64).   In reply,

plaintiff argues he gave notice to the County and City defendants of their alleged misconduct via

the exhibits he attached to his motions, and his alleged failure to comply with the safe harbor

provision is not a valid basis to deny sanctions.   (Docs. 60, 67).

Plaintiff did not comply with the safe-harbor provisions of Fed. R. Civ. P. 11 by first

serving his motion on counsel for the County and City defendants.   The Court therefore cannot

award sanctions under Rule 11.   *Ridder*, 109 F.3d at 296; *Nieves*, 153 F. App'x at 353; *Jodway*,

759 F. App'x at 384.   Further, plaintiff has not identified any conduct by defendants or their

counsel that warrants the imposition of sanctions.   Plaintiff's motions for sanctions should be

denied.

### D.   Plaintiff's motion for preliminary injunction (Doc. 75)

Plaintiff moves for a preliminary injunction against the City defendants, all officers within the "(Intel Unit) County," the HCPO, McKinley Brown, Deters and the Fusion Center enjoining them against using and sending the April 15, 2016 "Alert Bulletin," which was sent to various law enforcement agencies prior to his criminal trial, and any other unknown bulletins; requiring them to file an updated notice with this Court that the Alert/Bulletin has been deleted from all local and national law enforcement computer networks and databases; and enjoining the City and County defendants against prohibiting plaintiff from contacting the Cincinnati Police Department, the Hamilton County Sheriff's Office, or the HCPO.   (Doc. 75 at 1, 12-13; *see* Exh. A).   Plaintiff alleges the Alert was issued for the purpose of having the City and County defendants find plaintiff at various locations and harass him.   (*Id*. at 4).   Plaintiff claims that although he was acquitted of the terrorism charges against him, the City and County defendants continue to harass him.   (*Id*. at 6).   Plaintiff contends that fire trucks and ambulances have also been harassing him.   (*Id*. at 7).   Plaintiff argues that all of the elements required to grant a preliminary injunction are satisfied because he is likely to succeed on the merits of his First Amendment claim; the loss of his First Amendment freedom is a harm that is both immediate and irreparable; the likelihood of success and alleged violation of his constitutional rights necessarily means others will not be harmed by issuance of an injunction; and it is always in the public interest to prevent violations of a party's constitutional rights.

The City and County defendants have filed a joint memorandum in opposition to plaintiff's motion for a preliminary injunction.   (Doc. 79).   They argue that plaintiff's First

Amendment retaliation claims are barred by the statute of limitations and are without merit; plaintiff's delay in filing the motion and the lack of evidence of ongoing harassment indicates that plaintiff will not likely suffer irreparable harm if an injunction is not issued; the potential harm that plaintiff could suffer if a preliminary injunction is not granted is substantially outweighed by the harm to the public that could result if an injunction were issued; and the public interest is best served by protecting law enforcement officers via tools such as the public safety bulletin.

In determining whether to issue a preliminary injunction, this Court must balance the following factors:

1.  Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;

2.  Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3.  Whether an injunction will cause others to suffer substantial harm; and

4.  Whether the public interest would be served by a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).   The four factors are not prerequisites but must be balanced as part of a decision to grant or deny injunctive relief.   *Id*.   A preliminary injunction is an extraordinary remedy that should only be granted if the movant carries his burden of proving that the circumstances clearly demand it.   *Id.* at 739.

A preliminary injunction is not warranted here.   Plaintiff is not likely to succeed on the merits of his First Amendment retaliation claims against defendants for the reasons discussed earlier in this opinion.   Further, plaintiff will not likely suffer irreparable harm if a preliminary injunction is not issued.   There is no indication that plaintiff has suffered continuing harm as a

result of the outstanding "Alert."   Further, it is in the interest of the public that the City and County defendants be allowed to perform their public safety and law enforcement functions based on all data and information legally available to them without interference by this Court.   Finally, the purpose of a preliminary injunction--to preserve the status quo until a trial on the merits can be held, *see S. Milk Sales, Inc. v. Martin,* 924 F.2d 98, 102 (6th Cir. 1991)--would not be served. According to plaintiff, the present status quo is that his First Amendment rights have been violated and these violations are ongoing.   The remedy plaintiff seeks is more than an injunction maintaining the status quo; instead, he seeks affirmative relief from this Court requiring that the public safety bulletin issued in April 2016 be terminated and directing that an updated notice be issued.   Plaintiff also asks this Court to restrict defendants from taking certain actions pertaining to plaintiff's contacts with them.   Plaintiff is not entitled to this extraordinary relief.   Plaintiff's motion for a preliminary injunction should be denied.

### E.   Plaintiff's motion for default judgment (Doc. 54)

Plaintiff moves for default judgment against defendants Hamilton County Sheriff's Office and Hamilton County Sheriff Jim Neil.   (Doc. 54).   Plaintiff contends that the summons and complaint were served on defendants Sheriff Neil-Hamilton County Sheriff's Office on November 18, 2019, but defendants "refuse[d]" service and the documents were returned to the Court on November 20, 2019.[12]   (*See* Doc. 5).   Plaintiff alleges that the County Defendants were aware that "Sheriff Neil-Hamilton County Sheriff's Office" refused to answer the summons and

---

[12] The record shows that summons and the complaint were sent via certified mail to Sheriff Neil at the Hamilton County Sheriff's Office on November 14, 2019.   (Doc. 2).   The summons was returned unexecuted on November 20, 2019.   (Doc. 5).   Plaintiff has not attempted to re-serve defendant Neil and has not completed service on defendants Neil and the Hamilton County Sheriff's Office to date.

complaint.   (*Id.* at 3).   Plaintiff contends that because Neil and the Sheriff's Office have allegedly refused to answer the complaint, he is entitled to default judgment against these defendants pursuant to Fed. R. Civ. P. 55(b)(2).

The County defendants have filed a response in opposition to plaintiff's motion for default judgment.   (Doc. 65).   They argue that defendants Neil and the Hamilton County Sheriff's Office have not been properly served under Fed. R. Civ. P. 4(e), which states that unless federal law provides otherwise, an individual may be served in a federal judicial district by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).   Plaintiff argues in reply that Rule 4(e) does not apply because defendants Neil and the Hamilton County Sheriff's Office refused service, and he objects to counsel for the County defendants filing a response to his motion on behalf of Neil and the Sheriff's Office.

Plaintiff is not entitled to default judgment against defendants Neil and the Hamilton County Sheriff's Office.   Assuming, *arguendo*, that service by certified mail on these defendants was proper, plaintiff has not alleged that defendants violated plaintiff's constitutional rights or any provision of state law.   The only allegations related to Sheriff Neil in the complaint are that he refused to accept correspondence from plaintiff about the bill plaintiff received from the University of Cincinnati mental hospital, where plaintiff allegedly was falsely imprisoned on November 15, 2018.   (Doc. 1, ¶ 78).   Plaintiff does not allege any facts to suggest that Sheriff

Neil was involved in the decision to transport plaintiff to the hospital or that Neil played any role in transporting plaintiff there.   Thus, plaintiff has not stated a claim for relief against Sheriff Neil under § 1983.   *See, e.g., Gregory*, 444 F.3d at 751 (supervisory liability under § 1983 must be based upon more than a mere right to control employees).   Nor has plaintiff pled facts to show that defendant Neil can be held liable under any state law theory of liability.   Finally, a county sheriff's office is not a legal entity capable of being sued under Ohio law.   *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007) (citing *Barrett v. Wallace*, 107 F. Supp. 2d 949, 954-55 (S.D. Ohio 2000)); *see also Batchik v. Summit County Sheriff's Dept.,* No. 13783, 1989 WL 26084, at *1 (Ohio App. 9th Dist. Mar. 15, 1989).   Plaintiff therefore cannot bring a claim against the Hamilton County Sheriff's Department.   Plaintiff's claims against Sheriff Neil and the Sheriff's Department should be dismissed.

## IT IS THEREFORE RECOMMENDED THAT:

(1) The motions to dismiss under Fed. R. Civ. P. 12(b)(6) filed by defendants Patrick Dinkelacker (**Doc. 21**); Robert Winkler (**Doc. 24**); and City of Cincinnati and Cincinnati police officers Matthew Martin, Mike Drexelius, and Lieutenant Michael Fern (the City defendants) (**Doc. 34**) be **GRANTED**.

(2) The motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by defendants James Bogan, McKinley Brown, Joseph Deters, Greater Cincinnati Fusion Center/Homeland Security, Hamilton County, Ohio/Hamilton County Prosecutor's Office, Katherine Pridemore, and Seth Tieger (**Doc. 47**); Court Clinic/Central Clinic and Carla Dreyer (**Doc. 57**); Adelaida Fernandez and Summit Behavioral Healthcare/Elizabeth Banks (**Doc. 68**); and Jerome Stineman (**Doc. 72**) be **GRANTED**.

(3) Defendant Stineman's motion to strike plaintiff's response to his motion for judgment on the pleadings (**Doc. 81**) and plaintiff's motion to strike Stineman's motion to strike (**Doc. 82**) be **DENIED** as moot.

(4) Plaintiff's motion for preliminary injunction (**Doc. 75**) be **DENIED.**

(5) Plaintiff's motions for sanctions against the County defendants (**Doc. 49**) and the City defendants (**Doc. 51**) be **DENIED.**

(6) Plaintiff's motion for default judgment against defendants Hamilton County Sheriff's Office and Hamilton County Sheriff Jim Neil (**Doc. 54**) be **DENIED**.

(7) This case be **CLOSED** and **TERMINATED** on the Court's docket.

Date:  10/16/2020

Karen L. Litkovitz
United States Magistrate Judge

67

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TERRY BROWN,                                     Case No. 1:19-cv-969
      Plaintiff,                             Barrett, J.
                                            Litkovitz, M.J.

      vs.

HAMILTON COUNTY, OHIO/
HAMILTON COUNTY PROSECUTOR'S
OFFICE,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).