**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Terry Brown,                              )
                                          )
            Plaintiff,                    )    Case No.: 1:19-cv-00969
                                          )
    vs.                                   )    Judge Michael R. Barrett
                                          )
Hamilton County, Ohio/Hamilton County     )
Prosecutor's Office, *et al.*,            )
                                          )
            Defendants.                   )
                                          )

## ORDER

This matter is before the Court on the remaining motions addressed in the Report
and Recommendation (R&R) filed by Magistrate Judge Karen L. Litkovitz on October 19,
2020. Plaintiff Terry Brown brings this pro se civil rights action against numerous
Defendants under 42 U.S.C. § 1983 (alleging claims for violations of his First, Fourth,
Fifth, and Fourteenth Amendment rights) and state law (under the Court's supplemental
jurisdiction).

Previously, in an Order entered on September 29, 2021 (Doc. 108), the
undersigned accepted and adopted the Magistrate Judge's R&R as to the motions to
dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants Patrick T. Dinkelacker (Doc.
21) and Robert Winkler (Doc. 24), which the Court **GRANTED**; the motions for judgment
on the pleadings under Fed. R. Civ. P. 12(c) filed by Defendants Court Clinic/Central
Clinic and Carla Dreyer (Doc. 57), Defendants Summit Behavioral Healthcare Hospital,
Elizabeth Banks, and Dr. Adelaida Fernandez (Doc. 68), and Defendant Jerome
Stineman (Doc. 72), which the Court **GRANTED**; the motions to strike filed by Defendant

Jerome Stineman (Doc. 81) and Plaintiff (Doc. 82), which the Court **DENIED as moot**; and Plaintiff's motion for default judgment against Defendants Hamilton County Sheriff Jim Neil and Hamilton County Sheriff's Office (Doc. 54), which the Court **DENIED** and, on its own motion, **DISMISSED** any and all claims against these two Defendants for failure to state a claim upon which relief can be granted. The Court later **DENIED** Plaintiff's motion (Doc. 109) to reconsider (alter/amend) and to clarify its September 29, 2021 Order. (Doc. 123).

Remaining for review by the undersigned is the motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants City of Cincinnati and Cincinnati Police Officers Matthew Martin, Mike Drexelius, and Lieutenant Michael Fern (City Defendants) (Doc. 34); the motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by Defendants James Bogen, McKinley Brown, Joseph Deters, Greater Cincinnati Fusion Center/Homeland Security, Hamilton County, Ohio/Hamilton County Prosecutor's Office, Katherine Pridemore, and Seth Tieger (County Defendants) (Doc. 47); Plaintiff's motion for preliminary injunction (Doc. 75); and Plaintiff's motions for sanctions under Fed. R. Civ. P. 11 against the County Defendants (Doc. 49) and the City Defendants (Doc. 51)

As recited in its Order entered on September 29, 2021 (Doc. 108), notice was given to the parties under Fed. R. Civ. P. 72(b), including notice that they may forfeit[1] rights on appeal if they failed to file objections to the R&R in a timely manner. *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). Plaintiff timely filed objections on October

---

[1] The Sixth Circuit has clarified that failure to object is not a waiver, but instead a forfeiture. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) ("Although our cases often use the terms interchangeably, '[w]aiver is different from forfeiture.' Waiver is affirmative and intentional, whereas forfeiture is a more passive 'failure to make the timely assertion of a right[.]'") (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

27, 2020.  (Doc. 90).  Both the City and County Defendants responded to Plaintiff's objections on November 10, 2020.  (Docs. 92, 94).  Plaintiff also filed replies to Defendants' responses.  (*See* Docs. 99, 101).[2]

## I.     STANDARD OF REVIEW

With respect to dispositive matters, and when the Court receives timely objections to an R&R, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*  The Court has engaged in a de novo review, which is set forth below.

## II.    ANALYSIS

The Court notes, as it did in its Order entered on September 29, 2021 (Doc. 108 PAGEID 1146–47),  that Plaintiff has lodged five across-the-board objections to the R&R, claiming that Magistrate Judge Litkovitz erred because: (1) the R&R "excluded the weight of the evidence Plaintiff admitted in this case"; (2) the R&R "is in direct conflict with other State/Federal District/Supreme Courts cases"; (3) the R&R did not follow "case law that is mandated for lower courts to follow, that Plaintiff cited in this case"; (4) she acted "as an advocate for Defendants rather than trier of fact/judge which gives a bias and prejudice affect against Plaintiff"; (5) and she "allowed Defendants [not] to answer Plaintiff's complaint *(that led Plaintiff to have Defendants to answer 'Admit & Deny' with attached affidavit based on Plaintiff's actual claims in the complaint)* before rendering an accurate report/recommendation before the District Judge."  (Doc. 90 PAGEID 1013–14 (emphasis

_____

[2] Replies are not permitted under the magistrate judge statute or the civil rules and the Court is under no obligation to consider them as part of its de novo review.

in original)). These general objections are nothing more than mere disagreements with the R&R and, as such, will be disregarded. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) (explaining that general disagreements with the Magistrate Judge fall short of a plaintiff's obligation to make specific objections to an R&R); *see also Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.").

The Court addresses below Plaintiff's objections that are specific to the remaining motions.

## A. Rule 12(b)(6) Motion to Dismiss by Defendants City of Cincinnati and Cincinnati Police Officers Martin, Drexelius, and Lieutenant Fern (City Defendants)[3]

### 1. Plaintiff's claims against Cincinnati Police Officer Lieutenant Fern

The Magistrate Judge recommends that Plaintiff's claims against Lieutenant Michael Fern should be dismissed for failure to state a claim for relief. (Doc. 89 PAGEID 961). She explains that the only allegations in the Complaint related to Fern concern conduct that occurred in March 2014, when he "continued to allow an illegal debt collection company called GWC Construction to break/enter Plaintiff's home for continued harassment" and Plaintiff's 911 calls "went unanswered." (*Id.* (citing Doc. 1 (¶ 25))). Plaintiff also alleges that (previously dismissed) Defendant Judge Patrick T. Dinkelacker allowed Fern to testify at his retrial on June 8, 2018 that Plaintiff was "mentally ill/committed terrorism for filing criminal [trespassing] charges" against a mortgage

---

[3] (*See* Docs. 34, 41, 42–46, 55).

company employee after Plaintiff defaulted on his mortgage. (*Id.* PAGEID 961–62 (citing Doc. 1 (¶ 66))).

Three reasons support the Magistrate Judge's recommendation. First, the March 2014 conduct has "no plausible connection" to the constitutional and state law claims alleged with regard to Plaintiff's May 2016 arrest and June 2018 criminal trial. (*Id.* PAGEID 962). Second, any § 1983 claim against Defendant Fern for actions taken in 2014 is barred by the applicable two-year statute of limitations. (*Id.*).[4] And third, Fern is absolutely immune from civil liability based on his trial testimony in 2018. (*Id.* (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983))).

Plaintiff's objections fail to directly address the statute-of-limitations issue. Instead, he argues that Defendant Fern was called to testify—at least in part—to disqualify counsel Plaintiff retained to defend him during his retrial. (Doc. 90 PAGEID 1019).[5] He also argues that Fern is an unreliable witness because he is on "the **Brady List**, *of corrupt police officers*." (*Id.* PAGEID 1020 (all emphasis in original)).[6] Plaintiff further maintains

---

[4] *See infra* n.7.

[5] According to Plaintiff, he retained (now deceased) attorney Mary J. Hugan. Hugan withdrew upon learning that Fern would be a witness because she was Fern's counsel in Fern's civil suit against the City, and to continue to represent Plaintiff would be a conflict of interest. (*See* Doc. 1 (¶¶ 66–67, 69, 74)).

[6] The City Defendants correctly note that Plaintiff's "Brady List" reference appears nowhere in the Complaint. (Doc. 94 PAGEID 1083). Nor does it appear in Plaintiff's memorandum in opposition to the City Defendants' Rule 12(b)(6) motion. It is well-settled that it is inappropriate to raise a new argument for the first time in objections to a magistrate judge's report and recommendation. *See Pauley v. Berryhill*, No. 3:16-cv-31, 2017 WL 1093283, at *3 (S.D. Ohio Mar. 23, 2017) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate [judge].")). Regardless, though, as will be discussed, this reference is irrelevant to the finding that Defendant Fern is entitled to common law witness immunity.

that Fern "knew in advance his testimony was not of the subject matter/relevant of the Terrorism case" and that his "sole presence was to be dishonest." (*Id.* PAGEID 1019).

Plaintiff's objections are beside the point.  As the Magistrate Judge more fully explains in her report as to County Defendant McKinley Brown, a trial witness "has absolute immunity with respect to *any* claim based on the witness' testimony" under § 1983.  (Doc. 89 PAGEID 980 (quoting *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (emphasis in original) (citing *Briscoe*, 460 U.S. at 332–33))).  Ohio likewise provides absolute immunity to witnesses who testify at trial.  (*Id.* (citing *Willitzer v. McCloud*, 6 Ohio St. 3d 447, 448–49, 453 N.E.2d 693, 695 (Ohio 1983))).  And immunity attaches even when the aggrieved party alleges that the witness *knew* his testimony was false.  (*Id.* (citing *Schmidt v. State Aerial Farm Statistics, Inc.*, 403 N.E.2d 1026, 1028 (Ohio Ct. App. 6th Dist. 1987))).  Thus, accepting Plaintiff's allegations as true—that Defendant Fern's testimony was given for an improper purpose—he remains absolutely immune from suit. Plaintiff's objections, therefore, are **OVERRULED**.

## 2. Plaintiff's § 1983 claims against Cincinnati Police Officers Martin and Drexelius

The Magistrate Judge recommends that Plaintiff's § 1983 claims (for alleged First and Fourth Amendment violations) against Officers Matthew Martin and Mike Drexelius be dismissed either because they fail to state a claim upon which relief can be granted or because they are barred by the applicable two-year statute of limitations.  (Doc. 89 PAGEID 962–69).[7]  Specifically, the Magistrate Judge recommends that Plaintiff's First

---

[7] As the Magistrate Judge explains, limitations periods in § 1983 suits are determined by reference to the appropriate "state statute of limitations and the coordinate tolling rules."  (Doc. 89 PAGEID 962 (citing *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (quoting *Bd. of Regents of Univ. of State of New York v. Tomanio*, 446 U.S. 478, 484 (1980))).  The appropriate statute of limitations for § 1983 civil rights actions arising in Ohio is found in Ohio Rev. Code § 2305.10, which requires that suits for

Amendment retaliatory prosecution claim, as well as his Fourth Amendment malicious prosecution claim, be dismissed because they fail to state a claim upon which relief can be granted. The Magistrate Judge also recommends that Plaintiff's First Amendment retaliatory arrest claim, as well as his Fourth Amendment claims for false arrest/unlawful detention/false imprisonment, use of excessive force, and unlawful search and seizure be dismissed because they are time-barred.

Plaintiff objects to the Magistrate Judge's statute-of-limitations analysis, arguing that the tolling provision set forth in Ohio Rev. Code § 2305.16[8] applies:

> Magistrate Litkovitz, acting as though Plaintiff had every opportunity/remedy to bring a § § 1983 action accurately/sufficiently from a *mental hospital* where Plaintiff was court ordered being mentally ill (*incompetent to stand trial*), given illegal drugs for (5) months affecting his brain, confined a year at Summit Behavioral Healthcare, then sent back to jail for little over two months where Plaintiff was ordered back into a mental hospital (Twin Valley) (Mental Retardation) for simply filing Motions to Disqualify Defendant Judge Patrick Dinkelacker and Motion for New Counsel against Plaintiff's Defense counsel James Bogen. Knowing the entire time *State/Federal law tolls the time*[.]

(Doc. 90 PAGEID 1021–22 (all emphasis in original)). But the allegations within Plaintiff's Complaint undermine this argument. Plaintiff states that he was admitted to (previously dismissed) Defendant Summit Behavioral Healthcare Hospital on June 7, 2016 for a competency evaluation. (Doc. 1 (¶¶ 38–41)). Plaintiff acknowledges, though, that he "was competent/released [   ] from Summit on May 30, 2017." (*Id.* (¶ 52)). Plaintiff states that

---

bodily injury be filed within two years after they accrue. (*Id.* (citing *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (quoting *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc))).

[8] "After the cause of action accrues, if the person entitled to bring the action becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought." Ohio Rev. Code. § 2305.16.

he was subsequently committed to a second psychiatric hospital—Twin Valley Behavioral Healthcare—on August 29, 2017.  (*Id.* (¶¶ 56–58)).  However, he was declared competent and returned to the Hamilton County Justice Center less than a month later, on September 21, 2017.  (*Id.* (¶ 58)).  As of September 21, 2017, then, Plaintiff was no longer under the disability of "unsound mind" such that the two-year period by which he was required to file his § 1983 claims resumed running.  Plaintiff's claims expired on September 21, 2019, which clearly predates his November 14, 2019 Complaint.

Plaintiff further argues that the statute of limitations is tolled by the "continuing violation" doctrine, citing *Belcher v. Ohio Dep't of Human Servs.*, 48 F. Supp. 2d 729, 736–37 (S.D. Ohio 1999).  This premise fails, too.  Plaintiff's First Amendment retaliatory arrest claim, along with his Fourth Amendment claims for false arrest/unlawful detention/false imprisonment, use of excessive force, and unlawful search and seizure, are exclusively linked to his May 3, 2016 arrest.  Because Plaintiff challenges a discrete *incident* of unlawful conduct, as opposed to an unlawful *practice*, the continuing violation doctrine does not apply.  *See Belcher*, 48 F. Supp. 2d at 736.

Plaintiff also objects to the Magistrate Judge's failure-to-state-a-claim analysis regarding his First Amendment retaliatory prosecution claim and Fourth Amendment malicious prosecution claim.  (Doc. 90 PAGEID 1021 ("Magistrate Litkovitz, findings are totally *outside* of the pleadings of what Defendants never mentioned/defense against Plaintiff's complaint and Plaintiff's oppositions attached with clear evidence against all Defendants motions.") (all emphasis in original)).  As a matter of general jurisprudence, the Court will not manufacture arguments on a represented parties' behalf.  *See, e.g., Cardinal Land Conservancy, Inc. v. United States Dep't of Agric.*, No. 1:18-cv-00534,

8

2022 WL 798360, at * 10 n.17 (S.D. Ohio Mar. 16, 2022).  But that is not what the Magistrate Judge did.  She simply reviewed the Complaint and noted the obvious:  Plaintiff alleges no facts to support a claim that the City Defendants were involved in the post-arrest decision to prosecute him.  The Magistrate Judge's consequent recommendation to dismiss for failure to state a claim is neither improper nor incorrect.

 Plaintiff's objections—to the Magistrate Judge's conclusion that his § 1983 claims (for alleged First and Fourth Amendment violations) against Officers Matthew Martin and Mike Drexelius be dismissed—are **OVERRULED**.

### 3.  Plaintiff's § 1983 claim against the City of Cincinnati

The Magistrate Judge recommends that Plaintiff's § 1983 claim be dismissed against the City of Cincinnati because, under § 1983, a plaintiff cannot sue a local government entity on the theory of *respondeat superior*.  (Doc. 89 PAGEID 969 (citing *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)))).  She explains that, for a municipality to be liable under § 1983, the city itself must be engaged in its "own wrongdoing."  (*Id.* (quoting *Gregory* (citing *Monell*))).  A plaintiff may show "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  (*Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)))).  To establish *Monell* liability on a single-act theory, a plaintiff must demonstrate that an official responsible for establishing "final policy with respect to the subject matter

in question" made a "deliberate choice to follow a course of action . . . from among various alternatives" and that course of action was the "moving force" behind the plaintiff's injury. (*Id.* (citing *Burgess*, 735 F.3d at 479 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 484–85 (1986)))).  Finding that the Complaint fails to include allegations that satisfy any of these criteria, the Magistrate Judge recommends that Plaintiff's § 1983 claim against the City of Cincinnati be dismissed.  (*Id.*).

Plaintiff objects, claiming he has alleged that officials with final decision-making authority ratified illegal actions.  (Doc. 90 PAGEID 1028–29).  He refers the Court to a letter he sent (by certified mail)[9] on July 30, 2019 to then-Mayor John Cranley and the City Manager "demanding to stop City Defendants-Cincinnati Police from harassing him by committing menacing by stalking, illegal GPS tracking to avoid any additional confrontation (car crashes/injuries) to Plaintiff as they already committed since 2015." (*Id.* PAGEID 1028). This objection fails for two reasons.  First, Plaintiff's Complaint alleges that he sent a letter on July 30, 2019 to Defendants Joseph Deters and McKinley Brown, both Hamilton County (as opposed to City of Cincinnati) actors.  (*See* Doc. 1 (¶ 78)). Second, *Plaintiff's* act of sending a letter, without more, cannot serve to establish a "deliberate choice" by a final decision-maker from "various alternatives" that is the "moving force" behind Plaintiff's alleged injury.     Accordingly, Plaintiff's objection is **OVERRULED**.

### 4.  Plaintiff's state law claims against the City Defendants

**Assault and Battery.**  The Magistrate Judge recommends that this claim be dismissed because it is time-barred.  (Doc. 89 PAGEID 969–70).  Under Ohio law, a claim

---

[9] Plaintiff claims that he sent his "cease and desist" letter not only by certified mail, but also by electronic mail and telefax.  (Doc. 90 PAGEID 1029).

for assault and battery must be brought within one year of its occurrence.  (*Id.* (citing *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166, 167 (1988))); *see* Ohio Rev. Code § 2305.111(B).  The assault and battery of which Plaintiff complains occurred on May 3, 2016, more than three years before he filed suit.  (*See* Doc. 1 (¶¶ 30–34, 121–25)).

Plaintiff objects, arguing again that the tolling provision set forth in Ohio Rev. Code § 2305.16 applies to the period "when Plaintiff was court ordered as mentally ill/medication/confined into a mental hospitals/county jail since 2016 up to the very day Plaintiff was released from jail on November 15, 2019."  (Doc. 90 PAGEID 1030).  But as already discussed, the allegations within Plaintiff's Complaint undermine this argument.  The one-year period by which he was required to file his claim for assault and battery clearly had expired by November 2019.  Plaintiff's argument that the continuing violation doctrine applies likewise falls short.  As with his constitutional claims, the Complaint asserts that Plaintiff's assault and battery claim is limited to the events surrounding his arrest on May 3, 2016.  (Doc. 1 (¶¶ 121–25)).  Furthermore, the continuing violation doctrine applies to statutes that remediate discrimination, *see Belcher*, 48 F. Supp. 2d at 736, not common law tort claims.

Plaintiff's objections—to the Magistrate Judge's conclusion that Plaintiff's state law claim of assault and battery is time-barred—are **OVERRULED**.

**Negligent/Intentional Infliction of Emotional Distress.**  The Magistrate Judge recommends that Plaintiff's claims for both negligent and intentional infliction of emotional distress be dismissed for failure to state a claim upon which relief can be granted.  (Doc.

89 PAGEID 970–71). Plaintiff once more cites to the tolling statute and the continuing violation doctrine in his objections.

Here, Plaintiff has missed the point altogether. The Magistrate Judge did not conclude that Plaintiff's emotional distress claims are time-barred; rather, she determined that the facts alleged within the Complaint are insufficient *as a matter of law* to allow recovery. Because Plaintiff has failed to object to the Magistrate Judge's merits conclusion, he has forfeited the issue. *Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th Cir. 2019). Plaintiff's state law claims of emotional distress against the City Defendants are appropriately dismissed.

**False Arrest/False Imprisonment/Malicious Prosecution/Invasion of Privacy.** The Magistrate Judge recommends dismissal of these claims for several reasons. (Doc. 89 PAGEID 972–75). First, Plaintiff's claim for malicious prosecution should be dismissed because Plaintiff does not allege that the City Defendants played any role in instituting or continuing the prosecution against him. (*Id.* PAGEID 973). Second, Plaintiff's claims for false arrest/false imprisonment[10] (to include his claim for invasion of privacy)[11] and malicious prosecution are barred by the one-year statute of limitations set forth in Ohio Rev. Code § 2305.11.[12] (*Id.*). Third, assuming (for purposes of argument only) that these

---

[10] In Ohio, "false arrest and false imprisonment as causes of action are indistinguishable." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005) (quoting *Rogers v. Barbera*, 170 Ohio St. 241, 243, 164 N.E.2d 162, 164 (1960)).

[11] In Ohio, a cause of action for invasion of privacy does not have a specific statute of limitations. *Jones v. General Motors Corp.*, No. 3:04cv373, 2007 WL 1023859, at *6 (S.D. Ohio Mar. 30, 2007). However, the Ohio Supreme Court has ruled that the statute of limitations is based on "the true nature or subject matter of the acts giving rise to the complaint, rather than the form in which the action is pleaded." *Id.* (quoting *Hidey v. Ohio State Highway Patrol*, 116 Ohio App.3d 744, 747, 689 N.E.2d 89, 91 (1996)). Here, Plaintiff's invasion of privacy claim is tied to his May 3, 2016 arrest. *Cf.* (Doc. 1 (¶¶ 114–120)) *with* (Doc. 1 (¶¶ 32, 33)).

[12] "An action for . . . malicious prosecution, or false imprisonment[ ] . . . shall be commenced within one year after the cause of action accrued[.]" Ohio Rev. Code § 2305.11.

claims could proceed, the City Defendants have statutory immunity under Ohio Rev. Code § 2744.001 *et seq.*, the Ohio Political Subdivision Tort Liability Act.  (*Id.* PAGEID 973–75).

Plaintiff's blanket objection, which references the tolling statute and the continuing violation doctrine, fails for the reasons previously discussed.  It is, therefore, **OVERRULED**.  As Plaintiff does not address the Magistrate Judge's merits conclusion that the allegations of the Complaint fail to support a malicious prosecution claim against the *City* Defendants or that the City Defendants are statutorily immune from suit, he has forfeited these issues. *See Berkshire*, 928 F.3d at 530–31. Plaintiff's state law claims of false arrest/false imprisonment, malicious prosecution, and invasion of privacy against the City Defendants are appropriately dismissed.

### B. Rule 12(c) Motion for Judgment on the Pleadings by Defendants James Brogen, McKinley Brown, Joseph Deters, Greater Cincinnati Fusion Center/Homeland Security, Hamilton County, Ohio/Hamilton County Prosecutor's Office, Katherine Pridemore, and Seth Tieger (County Defendants)[13]

### 1. Hamilton County Prosecutor's Office (HCPO)

The Magistrate Judge recommends dismissal of Defendant HCPO because it is not an entity that is capable of being sued under § 1983.  (Doc. 89 PAGEID 976).  The law on this point is clear.  Whether a county agency can be sued is determined "by the law of the state where the court is located[.]"  Fed. R. Civ. P. 17(b)(3).  Under Ohio law, "a county prosecutor's office is a sub-unit of a county government and is not itself *sui*

---

[13] (*See* Docs. 47, 66, 74).

*juris.*"  *Brown v. Lorain County Prosecutor's Off.*, No. 1:20cv291, 2020 WL 4475345, at *2 (N.D. Ohio Aug. 4, 2020) (citation omitted).

Plaintiff's continued reference to *Muller v. Oregon*, 208 U.S. 412 (1908) is wholly misplaced.  *Muller* considered the constitutionality of a state law that subjected employers to misdemeanor criminal penalties if they allowed women to work (in this case, in a laundry) more than ten hours per day.  The employer argued a Fourteenth Amendment violation, "[b]ecause the statute attempts to prevent persons *sui juris* from making their own contracts[.]"  *Id.* at 417.  While recognizing the "law of Oregon that women, whether married or single, have equal contractual and personal right with men[,]" the Supreme Court nonetheless upheld the statute based on "the inherent difference between the two sexes, and in the different functions in life which they perform."  *Id.* at 418–23.[14]  This holding is both anachronous and irrelevant to the issue of Ohio law before the undersigned.  Because they are repetitive and without merit, Plaintiff's objections—to the Magistrate Judge's conclusion that Defendant HCPO is not an entity capable of being sued under 42 U.S.C. § 1983—are **OVERRULED**.

### 2.  Greater Cincinnati Fusion Center/Homeland Security (Fusion Center)

The County Defendants represent that the Fusion Center "is a regional cooperative effort made up of the Hamilton County Sheriff's Office and the Department of Homeland Security whose purpose is to combat potential terrorist activity in the area.  It is essentially

---

[14] "The limitations which this statute places upon her contractual powers, upon her right to agree with her employer as to the time she shall labor, are not imposed solely for her benefit, but also largely for the benefit of all.  Many words cannot make this plainer.  The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the self-reliance which enables one to assert full rights, and in the capacity to maintain the struggle for subsistence.  This difference justifies a difference in legislation, and upholds that which is designed to compensate for some of the burdens which rest upon her."  *Muller*, 208 U.S. at 422–23.

an information sharing tool[.]"   Doc. 47 PAGEID 562.[15]   They ask that that the Fusion Center be dismissed because, to the extent it is a department of Hamilton County, it is not *sui juris*. The Magistrate Judge recommends dismissal, not on this basis, but because Plaintiff's "barebones factual allegation" fails to state a claim for relief under federal or state law.  (Doc. 89 PAGEID 976–77 (citing Doc. 1 (¶ 62), "[T]he only factual allegation that plaintiff makes about the Fusion Center is that according to the testimony McKinley Brown gave at plaintiff's criminal trial, the Fusion Center issued an 'Alert/Bulletin' to 'law enforcement/fusion centers/homeland security' on April 15, 201[6] at the request of McKinley Brown and the HCPO due to threats plaintiff had made against Judge Ghiz and police officers.").

Plaintiff concedes that his objections repeat arguments already made by him. (Doc. 90 PAGEID 1032 ("Again, Plaintiff clearly claimed/stated all the above in the complaint/memo in oppositions before this court.")).  Under *Aldrich*, then, they fail. Plaintiff's objections—to the Magistrate Judge's conclusion that the Fusion Center be dismissed as a party defendant—are **OVERRULED**.

### 3. Plaintiff's First Amendment claims against Joseph Deters and McKinley Brown

The Magistrate Judge recommends dismissal of the First Amendment claims alleged against Defendants Joseph Deters (Hamilton County Prosecutor) and McKinley Brown (HCPO Chief of Detectives) because they are time-barred.  (Doc. 89 PAGEID

---

[15] Plaintiff does not dispute this description.

978).  The last date on which Plaintiff's putative claims could have accrued was April 15, 2016,[16] more than two years[17] prior to him filing this civil action in November 2019.

Plaintiff objects to the Magistrate Judge's conclusion, randomly asserting that she "act[ed] as personal advocate/political move for Deters/McKinley Brown due Deters is up for Re-election on November 3, 2020."  (Doc. 90 PAGEID 1033).  Aside from being scurrilous, this statement fails to pinpoint error.  Moreover, as previously discussed, Plaintiff's citation to the state tolling statute and the federal continuing violations doctrine fails to save his § 1983 claims.  Plaintiff's objections are thus **OVERRULED**.

### 4. Plaintiff's malicious prosecution claims against the Hamilton County prosecutors

The Magistrate Judge recommends that Plaintiff's federal and state claims for malicious prosecution against Defendants Deters, Katherine Pridemore (former Assistant Prosecuting Attorney), and Seth Tieger (Assistant Prosecuting Attorney) be dismissed because, as prosecutors, they are entitled to absolute immunity.  The Magistrate Judge explains that prosecutors are generally immune from liability under § 1983 "for prosecutorial functions intimately associated with initiating or presenting the State's case." (Doc. 89 PAGEID 978 (quoting *Drake v. Howland*, 463 F. App'x 523, 525 (6th Cir. 2012)

---

[16] As background, Plaintiff alleges that—for the period March 17, 2014 through April 15, 2016— he "repeatedly sent written complaints via certified mail, e-mails, faxes" to the HCPO about "illegal profiling/harassment" by law enforcement after he refused to be an informant in a then-pending high-profile criminal case.  (Doc. 1 (¶¶ 25, 26)).  Also, on March 3, 2016, he submitted a complaint over an entry filed (on November 10, 2015) by Hamilton County Common Pleas Court Judge Leslie Ghiz, who was presiding over a mandamus action he brought to stop said "illegal profiling/harassment".  (*Id.* (¶¶ 26, 27)).  Plaintiff then telephoned Brown on April 15, 2016, at which time Brown "claimed" that the HCPO "does not investigate judges nor police officers".  (*Id.* (¶ 28)).  Plaintiff later learned that Brown (on behalf of the HCPO) asked the Fusion Center to issue the aforementioned "Alert/Bulletin" as a result of their conversation, which had become "heated".   (*Id.* (¶¶ 28, 62)).

[17] *See supra* n.7.

(citing *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976)))).[18] This same immunity is extended under Ohio law as well. (*Id.* PAGEID 979 (quoting *Beckett v. Ford*, 384 F. App'x 435, 452 (6th Cir. 2010) ("[T]he Ohio rules governing prosecutorial immunity mirror the federal rules: in Ohio, 'prosecutors are considered "quasi-judicial officers" entitled to absolute immunity granted judges, when their activities are "intimately associated with the judicial phase of the criminal process."'") (citing *Willitzer v. McCloud*, 6 Ohio St. 3d 447, 449, 453 N.E.2d 693, 695 (Ohio 1983) (quoting *Imbler*, 424 U.S. at 430)))). Here, Plaintiff complains of a "fraudulent" criminal case prosecuted against him and the evidence introduced to perpetrate the alleged fraud. According to the Magistrate Judge, "[b]ringing charges and making decisions about evidence to present are core functions 'intimately associated with initiating or presenting the State's case.'" (*Id.* (quoting *Drake*, 463 F. App'x at 525)). Moreover, prosecutors are entitled to immunity for the performance of these functions "regardless of whether they acted maliciously or in bad faith." (*Id.* (citing *Imbler*, 424 U.S. at 427–28[19])).

Plaintiff's objections do not address the legal authority cited by the Magistrate Judge, but instead reiterate arguments already made. Under *Aldrich*, then, they fail. Plaintiff's objections—to the Magistrate Judge's conclusion that Plaintiff's malicious prosecution claims against the County prosecutors should be dismissed because they are entitled to absolute immunity—are **OVERRULED**.

---

[18] In contrast, prosecutors are only entitled to qualified immunity for "investigative" or "administrative" conduct "unrelated to advocacy." *Drake*, 463 F. App'x at 525 (citations omitted).

[19] "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Imbler*, 424 U.S. at 427–28.

**5. Plaintiff's claim against McKinley Brown**

As with City Defendant Lieutenant Fern, the Magistrate Judge recommends that Plaintiff's claims against Defendant McKinley Brown—which also arise out of his testimony against Plaintiff at his criminal trial—be dismissed because Brown is entitled to absolute immunity.[20]  And Plaintiff's objections again fail to address the legal authority cited by the Magistrate Judge.  To respond that Defendant Brown was "beyond a witness" but, rather, "ultimately the mastermind behind the entire case against Plaintiff" is irrelevant to the analysis.  Plaintiff's objections—to the Magistrate Judge's conclusion that Defendant Brown is entitled to absolute immunity from claims that arise out of his testimony against Plaintiff at his criminal trial—are **OVERRULED**.

**6. Plaintiff's claims for negligent/intentional infliction of emotional distress**

The Magistrate Judge recommends that Plaintiff's claims for both negligent and intentional infliction of emotional distress be dismissed for failure to state a claim upon which relief can be granted.  (Doc. 89 PAGEID 980–81).  She refers the reader to her analysis of these same claims as alleged against the City Defendants. (*Id.*).

The tort of *negligent* infliction of emotional distress "is generally asserted by a bystander because []he witnessed another person in danger and the defendant was unaware of the presence of the bystander."  *David v. Matter*, 96 N.E.3d 1012, at ¶ 14 (Ohio Ct. App. 6th Dist. 2017).  In contrast, the tort of *intentional* infliction of emotional distress is generally "asserted by the victim of the defendant's conduct, not a bystander." *Id*. at ¶ 16.  Because Plaintiff fails to allege "danger to another," the Magistrate Judge concludes that he fails to state a claim of negligent infliction of emotional distress against

---

[20] *See supra* pp. 4–6.

the County Defendants.  (Doc. 89 PAGEID 981; *see* Doc. 89 PAGEID 970 (citing *Stout v. United States*, 721 F. App'x 462, 473 (6th Cir. 2018) (citing *David v. Matter*, 96 N.E.3d 1012, at ¶ 14))).  The Magistrate Judge further concludes that he fails to state a claim of intentional infliction of emotional distress, because Plaintiff's allegations against the County Defendants "do not rise to the level of conduct that is 'outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.'"  (Doc. 89 PAGEID 981 (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008))).

Plaintiff objects to the Magistrate Judge's merits conclusion that he fails to state a claim for negligent infliction of emotional distress.  (Doc. 90 PAGEID 1037 ("Plaintiff ***reaffirms*** all objections stated in **section v**, regarding this **section vi**, for negligent infliction or emotional distress, due it is the same findings but different title/defenses for County Defendants." (all emphasis in original)); *see* Doc. 90 PAGEID 1036 ("It was (MB)/Deters sent illegal documents/discovery to Defendants Court/Clinic/ Summit to illegally list Plaintiff mentally ill/force medication/confined in mental hospitals for over a year that causes a fraudulent affect against Plaintff.")).  But his objection ignores the controlling case law (requiring "danger to another" allegations) relied upon by the Magistrate Judge.  Plaintiff's state law claims of emotional distress against the County Defendants are appropriately dismissed as well.

### 7.  Plaintiff's claims against James Bogen

Defendant James Bogen is a private attorney who served as Plaintiff's court-appointed defense attorney.  The Magistrate Judge recommends that Plaintiff's constitutional claims against Defendant Bogen be dismissed because a private attorney

is not a state actor who can be sued under § 1983. (Doc. 89 PAGEID 981–82 (citing *Floyd v. County of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012); *Dunning v. Yuetter*, 12 F. App'x 282, 284 (6th Cir. 2001))). And the Magistrate Judge correctly notes that this premise is true regardless of whether the criminal defense attorney is a public defender or a private attorney. (*Id*. PAGEID 982 (citing *Alexander v. Ohio*, No. 1:16 cv 1051, 2016 WL 11594174, at *1 (N.D. Ohio July 20, 2016) (quoting *Jordan v. Kentucky*, No. 3:09CV424, 2009 WL 2163113, at *4 (6th Cir. July 16, 2009) (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)))). The Magistrate Judge further recommends that the state law claims for negligent/intentional infliction of emotional distress be dismissed because Plaintiff has not stated a plausible claim for relief against Defendant Bogen.

Once again, Plaintiff's objections pay no attention to the dispositive case law relied upon by the Magistrate Judge. Sixth Circuit precedent decisively requires dismissal of his constitutional and state emotional distress[21] claims. Plaintiff's objections are **OVERRULED**.

### 8. Plaintiff's prayer for punitive damages against the County Defendants

The County Defendants maintain that punitive damages may not be awarded against a political subdivision in a § 1983 action. (Doc. 47 PAGEID 574 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). They further maintain that punitive damages may not be awarded in Ohio absent proof of actual damages, and because Plaintiff has asserted no viable state claims against the County Defendants, he

---

[21] For example, Plaintiff lodges the same general objection to the Magistrate Judge's conclusion that he fails to state a claim for negligent infliction of emotional distress. (Doc. 90 PAGEID 1040 ("[O]nce Plaintiff filed motions against Bogen/Dinkelacker, Plaintiff was ordered back into a mental hospital now for mental retardation for retaliation. This did cause a *negligent infliction and emotional distress* state for Plaintiff.") (all emphasis in original)). As discussed with regard to both the City and County Defendants, this claim unequivocally fails without "danger to another" allegations.

*ipso facto* is not entitled to recover punitive damages. (*Id.* (citing *Shimola v. Nationwide Ins. Co.*, 25 Ohio St. 3d 84, 86–87, 495 N.E.2d 391, 393–94 (Ohio 1986))).

The Magistrate Judge concludes that it is unnecessary to address Plaintiff's prayer for punitive damages in light of her recommendation to the undersigned that all claims against the County Defendants be dismissed. (Doc. 89 PAGEID 982–83). In response, Plaintiff "reaffirms" his objections to the Magistrate Judge's antecedent conclusions. For all the reasons previously discussed, the Court, in turn, **OVERRULES** Plaintiff's objections.

### C. Plaintiff's Motion for Preliminary Injunction[22]

Plaintiff moves for a preliminary injunction against the City Defendants, all officers within the "(Intel Unit) County," the HCPO, McKinley Brown, Deters, and the Fusion Center enjoining them against using and sending the April 15, 2016 "Alert/Bulletin" that was sent to various law enforcement agencies prior to his criminal trial (and any other unknown bulletins); requiring them to file an updated notice with this Court that the Alert/Bulletin has been deleted from all local and national law enforcement computer networks and databases; and enjoining the City and County Defendants against prohibiting Plaintiff from contacting the Cincinnati Police Department, the Hamilton County Sheriff's Office or the HCPO. After balancing the four factors set forth in *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000), the Magistrate Judge concludes that a preliminary injunction is not warranted because: (1) Plaintiff is not likely to succeed on the merits of his First Amendment retaliation claims; (2) there is no indication that Plaintiff has suffered continuing harm because of the outstanding Alert/Bulletin; (3) it is in the best

---

[22] (*See* Docs. 75, 76, 79, 85).

interest of the public to allow the City and County Defendants to perform their public safety and law enforcement functions based on information legally available to them without interference by the Court; and (4) the remedy Plaintiff seeks asks for more than an injunction maintaining the status quo.  (Doc. 89 PAGEID 999-1000).

Plaintiff's objections do not address the legal authority cited by the Magistrate Judge, but instead restate arguments he has already made.[23]  Under *Aldrich*, then, they fail.  Plaintiff's objections—to the Magistrate Judge's conclusion that a preliminary injunction should not be issue—are **OVERRULED**.

### D.  Plaintiff's Motions for Sanctions[24]

Plaintiff asks the Court to impose sanctions under Fed. R. Civ. P. 11 on the County Defendants and their attorneys for filing their Rule 12(c) motion for judgment on the pleadings and on the City Defendants and their attorneys for filing their Rule 12(b)(6) motion for failure to state a claim.  The Magistrate Judge recommends that the motions be denied, because, as Defendants argue, Plaintiff did not comply with the "safe harbor" provision of Rule 11.  (Doc. 89 PAGEID 996–98 (citing *Ridder v. City of Springfield*, 109 F.3d 288, 294, 296 (6th Cir. 1997); *Jodway v. Orlans, PC*, 759 F. App'x 374, 384 (6th Cir. 2018); *Nieves v. City of Cleveland*, 153 F. App'x 349, 353 (6th Cir. 2005))).

The safe harbor language of Rule 11 reads as follows:

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  **The motion must be served** under Rule 5**, but it must not be filed** or be presented to the court if the challenged paper,

---

[23] Plaintiff reprises his unavailing (and absurd) accusation that "Magistrate Litkovtz is totally bias against Plaintiff and Litkovtz sole mission to act as personal advocate for all Defendants for *political move due Joseph Deters, Judge Patrick Dinkelacker and Judge Russell Mock are up for re-election on November 3, 2020*." (Doc. 90 PAGEID 1053 (emphasis in original)).

[24] (*See* Docs. 49–52, 56, 60, 64, 67).

claim, defense, contention, or denial is withdrawn or appropriately corrected **within 21 days after service** or within another time the court sets.

Fed. R. Civ. P. 11(c)(2) (emphases added).  As explained by the Sixth Circuit, "a motion for sanctions under Rule 11 must be served on the offending party for a period of 'safe harbor' at least twenty-one days prior to . . . judicial rejection of the offending contention." *Ridder*, 109 F.3d at 297.  "A party seeking sanctions must leave sufficient opportunity for the opposing party to choose whether to withdraw or cure the offense voluntarily before the court disposes of the challenged contention."  *Id*.

Plaintiff's objections do not address the legal authority cited by the Magistrate Judge.  Instead, he insists, as he did in support of his motions, that his filing of "several exhibits including court transcripts" from his state-court case put Defendants on notice that "their motions claims within were purposely brought in bad faith."  (Doc. 90 PAGEID 1049).  These objections clearly fail under *Aldrich* and even more clearly on the merits. "**First and most important, the rule specifically requires formal service of a motion**." *Penn, LLC v. Prosper Business Development Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) (emphasis added).  Substitute forms of notice do not comply with the rule.  *Penn*, 773 F.3d at 767–68; *Jodway*, 759 F. App'x at 383–84.  Plaintiff's objections—to the Magistrate Judge's conclusion that Plaintiff's motions for sanctions (against the County and City Defendants and their respective attorneys) should be denied—are consequently **OVERRULED**.

### III. CONCLUSION

Based on the foregoing de novo review, the Court **OVERRULES** Plaintiff's objections (Doc. 90) and **ACCEPTS** and **ADOPTS** the Magistrate Judge's October 19, 2020 R&R (Doc. 89) as to the five remaining motions. Accordingly:

1. The motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants City of Cincinnati and Cincinnati Police Officers Matthew Martin, Mike Drexelius, and Lieutenant Michael Fern (the City Defendants) (Doc. 34) is **GRANTED**.

2. The motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by Defendants James Bogen, McKinley Brown, Joseph Deters, Greater Cincinnati Fusion Center/Homeland Security, Hamilton County, Ohio/Hamilton County Prosecutor's Office, Katherine Pridemore, and Seth Tieger (the County Defendants) (Doc. 47) is **GRANTED**.

3. Plaintiff's motion for preliminary injunction (Doc. 75) is **DENIED**.

4. Plaintiff's motions for sanctions against the County Defendants (Doc. 49) and the City Defendants (Doc. 51) are **DENIED**.

5. This Clerk shall **ENTER JUDGMENT** and thereafter **CLOSE** and **TERMINATE** this case from the Court's active docket.

**IT IS SO ORDERED.**

                                         /s/ *Michael R. Barrett*
                                         Michael R. Barrett, Judge
                                         United States District Court